ABRAHAM HOFFMAN et al., Respondents, v. THE UNION FERRY COMPANY OF BROOKLYN, Appellant.

In an action to recover damages for injuries resulting from the collision of vessels navigating public waters, the omission of the injured vessel to comply with statutory regulations, or with the usages and customary laws of the sea, is not, *per se*, a bar to a recovery; it is one of the circumstances to be considered in ascertaining the proximate cause of the injury, and when evidence is given tending to show that the collision was caused solely by the wrongful or negligent acts of the other colliding vessel, that question is one of fact for the jury.

In such an action, it appeared that plaintiffs' boat was, at the time of the collision, in tow in New York bay; that the steam tug towing it had not the lights out prescribed by the act of congress, but had different lights. Evidence was admitted on the part of plaintiffs, under objection and exception, that tow-boats plying the Hudson river and New York bay carry lights such as were exhibited by the tug. This evidence was offered, not to establish a law by custom inconsistent with the general laws, but for the purpose of charging those navigating defendant's vessel with notice of the position of the tug, the direction in which she was moving, and the service in which she was employed, which were indicated by the lights. *Held*, that the evidence was properly received; and that those in charge of defendant's boat, having knowledge of the usage, were as much bound to heed the signals and take measures to avoid the collision as if the same facts had been signaled by the regulation lights.

*Walker* v. *Transportation Company* (3 Wal., 150), *Homer* v. *Dorr* (10 Mass., 26), *Noble* v. *Durell* (3 T. R., 271), distinguished.

Also *held;* that plaintiffs' expenses, necessarily incurred in retaining their crew after the collision, and in attempting to save the cargo, are proper items of damage.

There is no rule of law or usage requiring a vessel to lay to or come to anchor during a fog; whether it is more prudent so to do, or to proceed cautiously, is for the master to determine, and whether he exercise reasonable care and prudence in the determination is a question for the jury.

In the night, or in case of a fog, vessels are required to move with great circumspection, or to lay to or anchor, according to the danger of encountering other vessels.

A ferry boat is not exempt from this rule, although it may be she would be justified in leaving her dock upon her regular trips, proceeding cautiously in her usual course, when it would be negligent for a vessel in other service to do so.

Nor is a ferry boat exempted from the exercise of care and skill proportionate to the dangers of navigation and the circumstances in which she is in respect to other vessels.

The rules adopted by the Court of Admiralty in cases of collision have no application in a court of common law.

(Argued December 19, 1877; decided February 13, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of plaintiffs entered upon a verdict.

This action was brought to recover damages for injuries to plaintiffs' canal boat *Milton Hoag* resulting from a collision with defendant's ferry boat *Baltic,* alleged to have been caused by the negligence of defendant's employes.

The case upon a former appeal is reported in 47 New York, 176. Plaintiffs' evidence upon the second trial was substantially the same as upon the first. It tended to show that at the time of the accident plaintiffs' boat was in tow of a steam tug, the *Ontario,* proceeding from Jersey City to the foot of Broad street in New York. It was about 5 P. M., when they left and the sky was clear, but opposite the Battery they encountered a dense fog, the tug boat was slowed, the fog bell rung and the usual alarm signals given, lookouts were also stationed forward of the pilot-house. Plaintiffs' boat was lashed to the port side of the tug. The tug carried two bright

white lights forward, two aft, a green light on top of the pilot-house, and a head light ten or twelve feet above the upper deck. Plaintiffs were permitted to prove, under objection and exception, that the lights so carried were the same as tow boats plying the Hudson river and the bay of New York were accustomed to carry. There was no light upon the canal boat. While the Ontario was thus proceeding, defendant's ferry boat, the Baltic, was heard approaching on her regular trip from Brooklyn to New York, when she came in sight of the Ontario, the latter boat instead of porting her helm to pass by the right, according to ordinary rule, gave two whistles which was a signal requesting the Baltic to go to the left. It appeared that this was allowable by custom, and if the approaching vessel responds by two whistles this is an assent to the request, and the vessels act in conformity therewith, the ordinary rules being dispensed with. Evidence was given that immediately after the two whistles were sounded from the Ontario, two whistles were heard from the direction of the Baltic which were supposed to come from her. The Baltic kept on her course, the Ontario then stopped, and when the hull of the ferry boat came in sight reversed her engine. The Baltic passed the bow of the Ontario struck plaintiffs' boat injuring her so that to save her, it was necessary to beach her. Evidence was given tending to show that the Ontario and her tow were seen from the deck of the Baltic in time to have avoided the collision. Upon the question of damages plaintiffs were allowed to prove, under objection and exception, the amount they were required to pay after their boat sunk, in order to keep their crew to take care of the boat and cargo and see to the unloading.

Defendant's counsel moved for a nonsuit on the ground among others that plaintiffs were guilty of negligence contributing to the injury in failing to carry the lights prescribed by the act of congress (13 U. S. Stat. at Large, § 38); also in attempting to cross the track of the ferry boat during the fog and in not anchoring where the fog overtook the Baltic. The motion was denied and said counsel duly excepted. Said counsel

requested the court to charge among other things, that the carrying lights not provided for by said act of congress, was prohibited by said act and defeated a recovery. That the lights on the Ontario did not indicate the presence of a canal boat alongside, and the Baltic having cleared the Ontario did all that was required of her by reason of the lights exhibited, and if all hands on the ferry boat using ordinary care did not see the canal boat in time to avoid the collision defendant was not liable. The court declined so to charge, but stated as to the last proposition that it was a question of fact for the jury whether such a lookout ought not to have been kept on the ferry boat that the canal boat would have been seen. Defendant's counsel excepted to the refusal to charge and to such statements.

*Charles Mason* for the appellant. The court erred in allowing plaintiffs to show a custom among tow-boats of carrying lights different from those prescribed by the act of congress. (*Noble* v. *Durell*, 3 T. R., 271 ; *Beckwith* v. *Harding*, 3 B. & C., 508 ; *Walker* v. *Tr. Co.*, B. Wal., 150 ; *Winter* v. *U. S. Dist. Ark.* Hempst., 344 ; *Homer* v. *Dorn*, 10 Mass., 26, 28 ; *Rankin* v. *Am. Ins. Co.*, 1 Hall, 619, 632.) Plaintiffs could not recover unless they showed that they were free from negligence. (*Wilds* v. *H. R. R. R. Co.*, 29 N. Y., 315 ; *Munger* v. *Tona. R. Co.*, 4 id., 349 ; *Griffin* v. *Mayor, etc.*, 5 Seld., 465 ; *Willis* v. *L. I. R. Co.*, 20 N. Y., 73 ; *Grippen* v. *N. Y. C. R. R. Co.*, 40 id., 50.) The failure of plaintiffs to anchor their boat when she encountered the fog was contributory negligence. (*The Borussia*, Swabey, 94 ; *The Girolamo*, 3 Hagg., 174 ; *The Bay State*, 1 Abb. Adm., 233 ; *Seabrook* v. *The Sylph*, 4 Blatchf., 24 ; *The Portsmouth*, 9 Wal., 682 ; *Baxter* v. *T. and B. R. R. Co.*, 41 N. Y., 502 ; *Havens* v. *Erie R. Co.*, id., 296 ; *Wilcox* v. *Rome, etc.*, 39 id., 61 ; *Grippen* v. *N. Y. C. R. R. Co.*, 40 id., 50.) It was not negligence for defendant's boat to continue her trips through the fog. (Woolrich on Ways, 217 ; *State* v. *Mobeley*, 1 McMullin, 44 ; *Patrick* v. *Ruffner*, 2 Rob. [Va.], 209 ; *Steam*

*Ferry Boat Relief*, Olcott, 104; *The Brooklyn*, 4 Blatchf., 365.)   Plaintiffs cannot recover because of their failure to display lights on their boat. (*Barque Delaware* v. *Steamer Osprey*, 2 Wal. Jr., 268; *The R. P. Forbes*, Sprague, 328; *The Indiana*, 1 Abb., 330; *Peck* v. *Sanderson*, 17 How. [U. S.], 178; *Waring* v. *Clark*, 5 id., 441; *Nelson* v. *Leland*, 22 id., 48; *The Thomas Martin*, 3 Blatchf., 517; *The Osmanli*, 7 Notes of Cases, 509; *The Iron Duke*, 4 id., 591; *The Victoria*, 7 [Irish] Jur., 94; Lowndes on Collision, 4; *The Margaret* v. *The Tuscar of Glasgow*, Irish Times, Feb. 5, 1865.) It was negligence for those in charge of plaintiffs' boat not to put her helm hard-a-port. (1 Wm. Rob., 285, 471; 2 id., 271; 10 How. [U. S.], 558; 18 id., 572; 22 id., 461; 13 id., 101; 2 Curt., 142; 3 Blatchf., 37.)   The act of congress as to carrying lights applies to all classes of vessels and on all waters. (*The Chesapeake*, 1 Bene., 23; 5 Blatch., 411; *The Gamecock*, 1 Bene., 476; *The Favorita*, id,, 30; *The Corsica*, 9 Wal., 630; *The City of Paris*, id., 634; *The Gray Eagle*, 9 id., 508.)

*Henry Smith* for the respondents.   The carrying of a light prohibited by congress was not *per se* negligence. (*Blanchard* v. *N. J. Stbt. Co.*, 59 N. Y., 292.)   It was competent for plaintiff to show the kind of lights carried by tow-boats. (59 N. Y., 300.)

ALLEN, J.   Upon a former trial of this action the plaintiff was nonsuited, upon his own showing, upon the ground that a non-compliance with the acts of congress, prescribing the lights to be exhibited by steam vessels employed in towing other boats and vessels, was of itself negligence, precluding a recovery for injuries received from a collision with another vessel carrying the regulation lights, and thus within the law of congress.   The judgment was reversed, and a new trial granted, as reported in 47 New York, 176.   We were of the opinion, and so held, that the absence of the statutory cautionary signals were, at most, but presumptive evidence of negli-

gence, and might be overcome by other evidence, or by circumstances showing that the injury resulted from other causes, and that the absence of the regulation signals did not contribute to the loss, and that when evidence was given tending to prove that the collision was caused solely by the wrongful or negligent acts of the other colliding vessel, it became a question of fact for the jury whether the injury was attributable in whole or in part to the omission of the injured vessel to comply with the statutory regulations.

In actions for injuries resulting from the collision of vessels navigating public waters, the question is one of negligence on the part of those in charge of the respective vessels, and the omission of either or both to conform to legislative enactments, is but one of the circumstances to be considered in ascertaining the proximate cause of the injury, and if it appears that the injury was caused solely by the negligence or want of proper care and caution in the management of either of the vessels, and that the disregard of the statutory regulations did not contribute to the injury directly or indirectly, the mere omission to comply with the statute will not bar an action by the injured vessel if otherwise free from fault against the one by whose neglect the injury was caused. This is the well-established rule in all actions of negligence, and it is not necessary at this time and in this action to reconsider the reasons upon which the rule is founded, or the authorities by which it is supported. The rule may be somewhat modified in its application by courts of admiralty where trials are had by the court without a jury, and in which the rules of the common law are not admitted, the judges having a discretion to deny relief altogether, or to apportion the loss if both vessels are in fault.

The nonsuit was set aside by this court upon the former appeal, for the reason that the evidence tended to prove a state of facts which, if proved to the satisfaction of the jury, would have entitled the plaintiffs to recover. The leading facts which, upon the evidence, if credited, the jury might have found, are stated in the report of the case in 47 New York, *supra*.

These facts, if proved, established the negligence of the master and those in charge of the defendant's vessel as directly and solely causing the injury, and exculpated the plaintiffs and those in charge of the Ontario from all fault contributing to the injury, whether by neglecting to exhibit the statutory signal lights, or in the navigation of the vessel under the circumstances in which she was placed. The evidence given by the plaintiffs upon the trial now under review does not vary essentially from that given on the first trial. It was the same as that before given with, as it is claimed, the additional evidence that when the Baltic was seen from the Ontario, the latter, instead of putting her helm to port, to pass to the right, did not shift her helm, but gave two blasts of her whistle calling on the former to go to the left. It is claimed that this was so gross a violation of the law of the sea that it necessarily and conclusively established contributory negligence on the part of the Ontario. The statement of the proposition concedes that unless the departure from the law of the river contributed to the injury it does not bar a recovery, so that in this view it was a proper subject for the consideration of the jury. It was a matter of inference to be drawn from the facts as claimed to have been proved and from all the evidence. But the evidence was that it is allowable by usage and custom for one of two vessels approaching each other to request the other by two blasts from the whistle to pass to the left rather than to the right, and if the other vessel responds by two whistles it is an assent to the proposition, and the ordinary rules of the sea are dispensed with for that occasion by the assent of the two vessels. There was some evidence that immediately after the two whistles from the Ontario, two steam whistles were heard coming from the direction of the Baltic, and which were supposed to have come from that vessel. Whether the Baltic did assent in the manner suggested to pass on the left, or whether the latter hearing the whistles and seeing the Ontario continuing on her course, neglected all means of avoiding a collision, were questions for the jury. Whether this or any other departure of the injured vessel

from or disregard of the statute laws, or the usages and customary laws of the sea, caused or contributed to the injury, was upon the plaintiff's evidence, a question of fact. (*Blanchard* v. *N. J. Steamboat Co.*, 59 N. Y., 292.) A nonsuit at the close of the plaintiff's evidence would have been in conflict with the judgment of this court upon the former appeal substantially upon the same facts.

The evidence on the part of the defendant was in direct conflict with that given by the plaintiffs in respect to very many of the material circumstances, and if full effect had been given to it by the jury, a verdict for the defendant would have been the result.

Upon all the evidence the case presented at the close of the trial the discrepancies, conflicts and contradictions which are so frequent in actions of this character between the owners of colliding vessels, when the crews of the two vessels are the principal witnesses. However greatly the evidence may, in the opinion of the court, preponderate on the one side or the other, the question in such cases is necessarily for the jury.

Exception was taken to the admission of evidence, that towboats plying the Hudson river and the bay of New York carried lights as exhibited by the Ontario, and different from those prescribed by the act of congress. The evidence was offered and given not to substitute the local custom for the general laws displacing the latter or to make the custom the rule of decision, but to bring home to those in charge of and navigating the Baltic actual notice of the true position of the Ontario, the direction in which she was moving and the service in which she was employed. All these were indicated by the lights exhibited by her; and in that locality those in charge of the Baltic having knowledge of the usage, were as much bound to heed the signals and take measures to avoid a collision as if the same facts had been signaled by the regulation lights. This was not to establish a law by usage inconsistent with the general laws of the land, but to enable the jury to infer from the evidence that, notwithstanding the disregard by the Ontario of the general law, the neglect to

comply with its provisions did not contribute to the injury, and that the actual negligence and want of care by those in charge of the Baltic was the sole cause of the collision. The authorities quoted by the counsel for the appellant do not reach the question. In *Walker* v. *Transportation Company* (3 Wall., 150), *Homer* v. *Dorr* (10 Mass., 26), and *Noble* v. *Durell* (3 T. R., 271) it was sought to maintain an action or a defence upon local customs repugnant to the general law; that is, to found an affirmative right upon an illegal custom, and the claim was rejected by the court.

It was urged in behalf of the appellant, that the attempt of the Ontario to proceed on her course through the harbor of New York, in the dense fog which prevailed at the time, was, of itself, an act of negligence contributing to the collision, and barred an action for the injuries sustained. The evidence is conflicting as to the state of the weather and of the atmosphere at the time the Ontario left her dock. The witnesses on the part of the plaintiffs testified that there was no fog or darkness to interfere with the vision, or render it unsafe or imprudent to navigate a vessel in the harbor, and that the darkness, by reason of the fog, increased during the trip. Whether this was a true statement was for the jury. The defendant's witnesses did not agree to it. There is no positive rule of law or unbending usage which required the Ontario to lay to or come to anchor during the existence of the fog. Whether it was more prudent, being caught in the fog, to proceed cautiously and with circumspection, or to lay to, was a question to be determined by the master at the time, and a question for the jury, upon the trial, to say whether the master exercised reasonable care and prudence in adopting the course which he pursued.

The act of congress (10 Stat. at Large, 61, § 28) leaves it very much to the pilot or watch to determine whether the navigation is unsafe in darkness or fog, and this necessarily involves a determination as to the comparative dangers of proceeding or laying to. The danger of beaching or grounding the vessel is greater when the vessel is in motion. The danger

from collision in a crowded port may be as great or greater at anchor. *The Portsmouth* (9 Wall., 682) was the case of a ship grounding in consequence of the master's proceeding in a thick darkness, and mistaking the harbor. The court held that it was the duty of the master *if he could have safely done so*, to lay to, and wait outside the harbor until the morning, or until he could signal a tug-boat. In the case of *The Girolance* (3 Hagg. Ad. R., 174) it was held, under the circumstances, that the vessel ought to have brought up when the fog came on. In the other cases cited by counsel (*The Bay State*, 1 Abb. Ad. R., 233; *The Sylph*, 4 Blatch., 24; *The Portsmouth*, 9 Wall., 682) both vessels were proceeding in a dense fog, and this was condemned, the court saying that it was hazardous, and they would not discriminate with great nicety as to the degree of fault imputable to the one or the other of the two vessels, and that in the night or in case of a fog, vessels must move with great circumspection, or lay to or anchor, according to the danger of encountering other vessels. It is insisted by the appellant that the Baltic, as a ferry-boat, was exempt from this rule. I do not so understand the law. The running of a ferry-boat upon her regular trips is important to the public, and her efforts to serve the public should be regarded with favor. Negligence would not readily, or except upon a clear showing, be imputed to her in endeavoring to make her trips in the dark, or through a fog, but she is not exempt from any of the positive rules which are applicable to all vessels except when especially exempted by statute. In *The Sylph* (*supra*) Judge NELSON does not discriminate in favor of the ferry-boat. He dismissed the libel, because both vessels were navigating in a dense fog, but he expressly says, that had the other vessel been at anchor he would have charged the Sylph, which was held to be a ferry-boat, with the loss. It may be, and it is not necessary to hold otherwise, that a ferry-boat would be justified in leaving her dock upon her regular trips, and moving cautiously in her usual course, when it would be improper and negligent for a vessel in other service to do so. But the evidence which was

for the jury, upon the one side tended very strongly to show that the Ontario and her tow could have been, and were, seen from the decks of the Baltic in time to have avoided the collision by the exercise of reasonable care and skill, and this takes the case out of any rule regulating the action of vessels in a fog.    The fog was not, in such case, if the jury credited the evidence in behalf of the plaintiff, the proximate, or even the remote, cause of the collision.    The jury having found with the plaintiff, it must be assumed that they found every fact necessary to sustain the verdict in his favor, that is, that they credited his witnesses rather than those in behalf of the defendant, so far as they were in conflict.    While special privileges are conferred by law upon ferry-boats, and special watchfulness upon vessels crossing their track is enjoined by the courts, and is essential to safety, there is no rule that excepts them from the consequences of culpable negligence, or from the exercise of care and skill proportioned to the dangers of the navigation, and the circumstances in which they may chance to be in respect to other vessels.    This is not inconsistent with the protection given them by law in the exercise and enjoyment of the franchise conferred upon them, and in the use of their ordinary track as a passage-way.

The jury were charged that if the canal boat injured could not be seen until after the time to avoid the collision, the plaintiff could not recover, and the question, as one of fact, was fairly submitted to the jury.

The absence of a light upon the Hoag, whether in violation of law or not, was not material if, as the jury must have found under the instructions, that boat was in sight from the deck of the Baltic in time to have avoided the collision.    The lights were only necessary that the boat might be seen; and if it could be, and was, seen without them, the object of the lights was accomplished.    If the want of lights upon the boat in tow contributed to or caused the collision, there should have been no recovery, and could not have been under the rulings of the judge at the trial.    The question was, whether the collision was solely the result of negligence in the man-

agement of the Baltic, and that has been found adversely to the defendant; and the peculiar rules adopted in courts of admiralty for the administration of the laws of the sea cannot detract from the force and effect of the verdict, or authorize a court of common law to encroach upon the domain of the jury. The evidence is largely discussed by the learned counsel for the appellant, but it is not our province to review the facts when there is any evidence to sustain the verdict, and we do not, therefore, follow the counsel through his very elaborate and able brief. The burthen of proof was on the plaintiff to show that the injury was caused by the wrongful or negligent act of the Baltic, and without fault on the part of those in charge of the Ontario, and the crew; the case was submitted to the jury upon that theory, and the verdict is conclusive on this court. The expenses of the plaintiff, to which he was necessarily subjected in retaining his crew after the collision, and in attempting to save the cargo, were proper items of damage, and the objections to evidence of those expenses were properly overruled.

The judgment must be affirmed.

All concur.

Judgment affirmed.