ALBERT L. BURBANK

vs.

THE BETHEL STEAM MILL COMPANY.

Cumberland.   Opinion August 2, 1883.

*Nuisance. R. S., c. 17, §§ 12, 17, 19. Stationary steam engine. Charter. Bethel Steam Mill Company. Evidence.*

In an action to recover damages for burning of property, caused by the use of a stationary steam engine which was erected and used without a license, *Held;*

1. That the remedy was at common law and not by R. S., c. 17, §§ 12, 17, 19.

2. That to maintain the action the plaintiff must prove that the engine from its location, improper construction or insufficient repair was in fact a nuisance to the plaintiff, or that the defendants were guilty of negligence by reason of which fire was communicated to the mill and from it to plaintiff's buildings.

3. That the court cannot declare as a matter of law that the engine if located in a proper place and properly constructed and used, was in its nature, calculated to do mischief to the property of any person.

4. That if the engine was in the use of a third person under a contract with the defendants, by which he had the exclusive control of it, and was to make the proper repairs, and it was not in fact a nuisance when delivered to such person, but became a nuisance by his neglect to keep it in proper repair, or if the injury was caused by his negligence the defendants would not be liable.

5. That it was not admissible to show that the mill caught fire the year before, it appearing that that fire was not communicated to the mill by the use of the engine in any way.

The charter of the Bethel Steam Mill Company, (special stat. 1863, c. 259)* does not exempt the corporation from the provisions of R. S., c. 17, for the protection of the public, nor give them any right to erect and maintain an engine at such a place, or to construct and use it in such a manner that it would be a nuisance to others in the enjoyment of their property.

ON EXCEPTIONS from the superior court.

This was an action to recover damages sustained by reason of the burning of the plaintiff's house and barn at Bethel, August 26, 1876, the fire being communicated from the steam mill of the defendants which was burnt on that day. The writ was dated September 29, 1879. The plea was the general issue.

The opinion states the essential facts.

*W. L. Putnam,* for the plaintiff.

This action went to the jury upon the single question of liability for maintaining a nuisance, the contract with Pierce having shut out all claims upon the counts for negligence. R. S., c. 17, § 8, provide, in most sweeping language, remedy for injury to property by nuisance; as did its corresponding provision in the previous revision of 1857. The *dictum* at the close of the opinion in *Lyons* v. *Woodward,* 49 Maine, 29, is supposed by defendants, to restrict the effect of this statute to the class of nuisances particularly described in the first section of that chapter. The inquiry there was directed to the nature of the alleged *injury,* and not to the *cause* of the injury; and the court looked to section 1 as explaining the nature of the *injuries* for which an action would lie. It seems to us clear, that this action lies by express provision of the statute. However this may be, our

---

* Sections 1 and 2, defining the powers of the corporation, are as follows:

Section 1. John Lynch, David Hammons, their associates, successors and assigns, are hereby created and constituted a body corporate and politic by the name of the Bethel Steam Mill Company, with all the powers and privileges and subject to the duties and liabilities contained in the laws of this state relating to manufacturing corporations.

Section 2. Said corporation is authorized to manufacture all kinds of lumber in the town of Bethel, county of Oxford, and for this purpose may construct, repair and maintain upon their own lands all suitable buildings, and may purchase and hold such personal and real estate as may be necessary for this object, not to exceed one hundred thousand dollars. They may also construct and maintain such piers and booms as may be necessary and convenient for the operations of said mill; but said company are to have no more right to prevent or delay the passage of logs and timber on said Androscoggin river being driven below, than they would be entitled to if this act was not passed.

pleadings are such, that we maintain our suit, either at common law or upon the statute. It is now well settled in this State, that while no private action arises for a public injury by a public nuisance, one does lie for a private and special injury by a public nuisance. *Franklin Wharf* v. *Portland*, 67 Maine, 59 ; *Brown* v. *Watson*, 47 Maine, 161 ; *Dudley* v. *Kennedy*, 63 Maine, 465.

By R. S., c. 17, § 19, the use of defendants' engine made it a common nuisance. Being such nuisance, it was operated at the peril of defendants. *Frye* v. *Moor*, 53 Maine, 583 ; *Jones* v. *Railway Co.* 3 Q. B. 733 ; *Salisbury* v. *Herchenroder*, 106 Mass. 458 ; *Ryland* v. *Fletcher*, 3 Law Report, H. L. 330.

In reference to the eighth request, it will be seen that the charter does not expressly authorize the company to manufacture by steam. If it did, yet the locality and methods of erecting engines and guarding against fire and explosion, would remain to be provided for ; and there would be no presumption, that the legislature intended to supersede the wise and detailed provisions of the R. S., on these points. This precise principle of construction is settled in *Pratt* v. *Railroad Co.* 42 Maine, 586.

The statutory action of the selectmen with reference to stationary engines is *quasi* judicial, after notice to parties interested ; and its place cannot be supplied by the arbitrary municipal action of the inhabitants, even if such action had been valid, which according to *Brewer Brick Co.* v. *Brewer*, 62 Maine, 62, was not the fact.

In reference to the instructions of the court about the Pierce contract, we cite the following cases, and we think a perusal of them will obviate necessity of any argument or comment, and that they fully sustain the instructions. *Todd* v. *Flight*, 99 Eng. Com. Law Rep. 377 ; *Chicago* v. *Robbins*, 2 Black, 418 ; *Water Co.* v. *Ware*, 16 Wall. 566 ; Wheaton on Negligence, §§ 817–8 ; *Robbins* v. *Chicago*, 4 Wall. 657 ; *Eaton* v. *Railroad Co.* 59 Maine, 526 ; *Conners* v. *Hennesey*, 112 Mass. 96.

Inasmuch as Pierce did not erect the engine, and, for aught that appears, did not know that it was unlicensed, he might not be liable for the nuisance ; and therefore no one might be liable, unless defendant. *Pillsbury* v *Moore*, 44 Maine, 156.

With reference to the question of negligence, it would seem entirely proper, as throwing a proper light upon the case, to inquire whether, within a reasonable time previous to the fire complained of in the suit, fire had caught from the same alleged defect, and whether that fact had been brought to the attention of the president of the company or to the engineer in charge, who was there when the fire took place. It is claimed that *Parker* v. *Portland Publishing Co.* 69 Maine, 173, applies. We think not. This evidence seems to us within the principle of *Grand Trunk Railway Co.* v. *Richardson,* 1 Otto, 454.

*Strout and Holmes* with *Enoch Foster*, for the defendants, cited : *Parker* v. *Portland Pub. Co.* 69 Maine, 173 ; *Brightman* v. *Bristol*, 65 Maine, 435 ; *Lyons* v. *Woodward*, 49 Maine, 29 ; 2 Greenl. Ev. § 472 ; 1 Add. Torts, 197 ; *Rockwood* v. *Wilson*, 11 Cush. 226 ; *Morrison* v. *Davis*, 20 Pa. St. 171 ; *Penn. R. R. Co.* v. *Kerr*, 62 Pa. St. 353 ; *Harrison* v. *Berkley*, 1 Strobh. S. C. 525 ; *Sharp* v. *Powell*, L. R. 7 C. P. 253 ; *Fletcher* v. *Rylands*, L. R. 1 Ex. 265 ; *Ryan* v. *N. Y. C. R. R.* 35 N. Y. 210 ; Wharton, Neg. § 148, *et seq.* ; 1 Add. Torts, 6 ; Field, Damages, § 50 ; *M. & S. P. R. R. Co.* v. *Kellogg*, 4 Otto, 469 ; *Chapman* v. *A. & St. L. R. R. Co.* 37 Maine, 94.

Counsel contended further that not only was the stationary engine not a nuisance at common law, but that it could not be a common nuisance, inasmuch as its erection had been authorized by an act of the legislature. The act of incorporation was for the Bethel Steam Mill Co. and the character of the mill is indicated in the title of the act. In construing the act the court have a right to have recourse to the title. Bishop, Statutory Crimes, § 46 ; Dwarris on Statutes, § 102, note, and § 108.

The act of incorporation authorizes the company " to manufacture all kinds of lumber in the town of Bethel, county of Oxford, and for this purpose to construct, repair, and maintain upon their own land all suitable buildings. "

This authority, by implication, embraces everything that was necessary to its enjoyment. Now, if this was to be a steam mill company for the purpose of manufacturing lumber, and the company had a right to construct and maintain all suitable buildings

for that purpose, it would necessarily involve the erection and use of a steam engine as a part of the structure, otherwise the building would not be a steam mill. The authorities are ample and conclusive that where the legislature confers an authority of this kind upon a company or a person, and a building is erected in accordance with and for the purpose mentioned in the act of incorporation, such building cannot be a common and public nuisance, and the legislature, in its sovereign power, having conferred such authority, it does not lie within the province of municipal officers to defeat the grant from the State by neglecting or refusing to grant a license for the purpose contemplated by the act; in a word, the act of the legislature supersedes and takes the place of all other authority of less grade and potency. Upon this point we cite : *Boulton* v. *Crowther*, 2 B. & C. 703 ; *Steam Navigation Co.* v. *Morrison*, 13 C. B. 581 ; *Beaver* v. *Mayor, etc.* 8 E. & B. 44 ; *Brand* v. *Hammersmith, R. R. Co. L. R.* 2 Q. B. 241, 242 ; *Cracknell* v. *Mayor, L. R.* 4 C. P. 634, 635.

Such is the settled law of England ; and the current of American decisions sustains this doctrine fully. *Lawler* v. *Boom Co.* 56 Maine, 445 ; 6 Barber, 313, 318 ; 9 Barber, 350, 364 ; 18 Barber, 222, 247 ; 4 Cush. 72 ; Wood on Nuisance, §§ 746, 750; Wharton on Negligence, §§ 271, 869, 870 ; Addison on Torts, 882.

As an illustration of the binding force of an act of incorporation as against even general statute law, we cite the case of *Titcomb* v. *Union Marine & Fire Ins. Co.* 8 Mass. 325, where the court held an act incorporating an insurance company, and prescribing the particular manner in which the shares of members and stock were to be attached and sold on execution, to supersede the general provisions of statute upon the same subject passed prior thereto.

LIBBEY, J. In 1863, by private act, c. 259, the defendants were created a manufacturing corporation by the name of the "Bethel Steam Mill Company," with power to manufacture all kinds of lumber in the town of Bethel, and for that purpose

were authorized to construct, repair and maintain upon their land " all suitable buildings." They erected on their own land, in said town, a steam mill for the manufacture of lumber, with a stationary steam engine therein, without obtaining from the municipal officers of the town a license therefor.

In 1876 the mill was operated by one Pierce under a contract with the defendants, and in August of that year, the mill was burnt. A strong wind prevailed which carried the burning cinders upon the plaintiff's dwelling house and barn, and they were thereby burnt. The plaintiff brings this action to recover his damages sustained by that fire. The declaration contains three counts. The first two base the right of action upon the negligence of the defendants; the third founds it upon R. S., c. 17, § § 12, 17 and 19. As the case was tried and submitted to the jury by the presiding judge, the plaintiff's right to recover was based upon the third count.

The judge instructed the jury, in substance, as follows : If the defendants used their stationary steam engine, erected and maintained without a license, it was a common nuisance, and if the fire was communicated directly to the defendants' mill from the furnace, from the flues, or from the chimney, by reason of which the mill was burnt, and the burning of the plaintiff's buildings was a result naturally and reasonably to be expected from the burning of the defendants' mill, and the burning of the mill was the proximate cause of the burning of the plaintiff's buildings, the plaintiff was entitled to recover without proof that the steam engine was a nuisance, in fact, or of negligence on the part of the defendants. The great contention between the parties is whether the rule of law, thus given to the jury, is correct.

The first question that arises is, does the plaintiff's right of action rest upon the statute, or upon the common law? Sections 17 and 19, R. S., c. 17, had their origin in the act of 1846, c. 191 ; § 1 of that act, was the same as § 17, R. S., and prohibited the erection of a stationary steam engine without a license. Section three was as follows : " Any such engine hereafter erected without a license, made and recorded as aforesaid, shall

be deemed and taken to be a common nuisance without any other proof thereof than proof of its use." This is the same in meaning as § 17, c. 17, R. S. Section 4 was the same as § 20, c. 17, R. S., and gave the municipal officers, the same authority to abate such stationary steam engine, that health officers had to abate a nuisance to health by c. 14, R. S. The act imposed no penalty for its violation, and gave no action to any person for any injury therefrom.

Section 12, c. 17, R. S., had its origin in the act of 1821, c. 24, § 4. There was a slight change in its phraseology in the revision of 1857, but not to indicate an intention of the legislature to change its meaning. Before the revision of 1857, this statutory provision did not apply to the act of 1846. That act was merely a police regulation, declaring that a stationary steam engine, erected without a license should be deemed a common nuisance without other proof than proof of its use, and authorizing its summary abatement by the municipal officers of the town where it was erected. It gave no action to any person injured by it. His right of action, if any, was at common law.

In the revision of 1857, the act of 1846 was added to c. 146, R. S., of 1840, and became a part of chapter 17 of that revision. There is nothing in the revision indicating an intention of the legislature to change the construction of the two acts as they existed before the revision, and they should have the same construction after the revision as before. *Hughes* v. *Farrar*, 45 Maine, 72; *French* v. *Co. Com'rs*, 64 Maine, 580; *Lyon* v. *Woodward*, 49 Maine, 29. In the latter case this court put the same construction on c. 17, R. S., 1857, that we now put upon it, and after that decision was promulgated, the legislature re-enacted these provisions of R. S., 1857, in the revision of 1871, without change, thereby adopting the construction of the court.

From these considerations we are of opinion that the plaintiff's remedy, if he has any, is at common law and not by statute.

Can the action be maintained at common law without proof of negligence of the defendants, or that their steam engine was a nuisance, in fact? It is claimed by the counsel for the plaintiff, that it can be, on the ground that the defendants erected their

engine in violation of law, and having done so were insurers against all damage, which any one might sustain from its use; and in support of this proposition he cites and relies on *Ryland* v. *Fletcher*, 3 Law Rep. H. L. 330; *Jones* v. *Festiniog R. Co.* 3 L. R. (Q. B.) 733; *Salisbury* v. *Herchenroder*, 106 Mass. 458; *Frye* v. *Moor*, 53 Maine, 583.

We think these cases are all distinguishable from the case at bar. The authority of *Rylands* v. *Fletcher*, has been denied by many of the courts in this country, and by some accepted. This court has neither denied nor accepted it, and we have no occasion now to do so. Its authority, however, is not to be extended beyond the class of cases possessing all the elements upon which the judgment of the court was based. It is believed that the courts in this country — certainly in this state — have never held it applicable to fires, rightfully set upon one's own premises, which escape and extend on to the property of others. (*Simonton* v. *Loring*, 68 Maine, 164).

The case was before the House of Lords, on appeal from the exchequer chamber, (1 L. R. Exch. Cases, 265.) In the exchequer chamber the judgment of the court was delivered by BLACKBURN, J., who stated the legal proposition upon which the case was decided as follows: "We think that the true rule of law is, that the person, who for his own purposes, brings on his lands and collects, and keeps there *anything likely to do mischief* if it escapes, must keep it in at his peril, and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape." The House of Lords affirmed this rule as the law of the case. The essential element in this legal rule is, that the thing must be one "*likely to do mischief*." The court cannot declare, as matter of law, that the defendants' stationary steam engine, if located in a proper place, and properly constructed and used, was, in its nature, calculated to do mischief to the property of any person. *Brightman* v. *Bristol*, 65 Maine, 435; *Losee* v. *Buchanan*, 51 N. Y. 476.

In *Jones* v. *Festiniog R. Co.* the defendants were running their steam locomotive over their railroad without legal authority; and the court held them responsible for damage to the plaintiff's

property by fire, communicated by sparks or coals from the locomotive. The decision of the case was put upon the ground that the use of the locomotive steam engine on the defendants' road was *highly dangerous*, and the defendants used it at their peril. It affirms the rule in *Rylands* v. *Fletcher*.

In *Salisbury* v. *Herchenroder*, the defendants' hanging sign over the street was absolutely prohibited. It could not be legalized by license. It was unlawful as to every person passing along the street, or having property that might be damaged by it; and this unlawful element was present, acting with the wind in doing the damage to the plaintiff.

*Frye* v. *Moor*, does not sustain the rule claimed for the plaintiff. The law of the case is stated by TAPLEY, J., in the opinion of the court, as follows: "The defendants caused an *unnatural* accumulation of water in a reservoir above the mill of the plaintiff. If accumulated rightfully as to this plaintiff, they must at least exercise ordinary care in letting it again pass into its ordinary and accustomed channels over the plaintiff's property. If accumulated wrongfully, and without any right or authority, as against this plaintiff, if they let it into its ordinary and accustomed channels, they do so at their peril, and they must be held responsible for the consequences of their wrongful act." It is believed to be the settled law of this state, that, to render the defendant liable without negligence, his act must be shown to be wrongful as against the plaintiff.

If the defendants' steam engine is not in fact a nuisance and the defendant was not guilty of negligence, was its erection and use *wrongful* as against the plaintiff? What was the unlawful element that rendered it liable to abatement as a common nuisance? Clearly the want of a license. To-day without a license the statute declares it a nuisance. To-morrow with a license without change of location, structure, or use it is not a nuisance. It is not the use of a stationary steam engine that makes it a nuisance. Its use for any proper purpose is lawful. It is only when it is *unlicensed* that it is to be deemed a nuisance without any other proof than its use. What additional protection or security would a license have given to the plaintiff? How did

the want of it, in any way, affect the plaintiff's rights, or tend to cause his injury? The want of a license rendered it wrongful as against the public, as a violation of a police regulation; but it is not perceived how it did so as against the plaintiff.

But assuming that the defendants' engine *without a license,* was a nuisance for which the plaintiff could maintain an action for damage sustained from it, he must prove that his damage was caused by the particular element in its character or use which rendered it a nuisance. *Bowden* v. *Lewis,* 13 R. I. 189. Hence if a building is used as a slaughter house, and is a common nuisance by reason of its noxious exhalations or offensive smells, and it takes fire without negligence of the owner, and thereby the property of another is burnt, or destroyed, he cannot maintain an action against the owner of the slaughter house therefor, although he was using the building in violation of the statute; because his injury was in no way caused by the noxious exhalations or offensive smells. This is familiar law; and applying it to this case the instructions of the judge cannot be sustained. The want of a license in no way caused or contributed to the burning of the defendants' mill by which the plaintiff was damaged.

Again it is well settled law, fully recognized by the authorities cited for the plaintiff, that the wrong doer is responsible only for such damages as are the natural and ordinary consequences of his wrong unless it be shown that he knew or had reasonable cause to know that consequences not usually resulting from the act, are, by reason of some existing cause, likely to intervene so as to occasion damage to a third party. *Ryland* v. *Fletcher, supra*; *Sharp* v. *Powell,* 7 L. R. C. P. 253. How can it be said that the use of the defendants' engine, *without a license,* would naturally be calculated, in any greater degree, to communicate fire to the mill, than its use with a license? The want of a license could have nothing to do with the origin of the fire.

The law is regarded as well settled in this country by a line of decisions well considered that one doing a lawful act in a manner forbidden by law, is not absolutely liable for an injury caused to a third party by the act; nor is the violation of law in doing it conclusive evidence of negligence. *Baker* v. *Portland,* 58

Maine, 199 ; *Larrabee* v. *Sewall*, 66 Maine, 376 ; *Gilmore* v. *Ross*, 72 Maine, 194 ; *Kidder* v. *Dunstable*, 11 Gray, 342 ; *Spofford* v. *Harlow*, 3 Allen, 176 ; *McGrath* v. *N. Y. & H. R. R. Co.* 63 N. Y. 522 ; *Massoth* v. *D. & H. Canal Co.* 64 N. Y. 524 ; *Knupfle* v. *Knick. Ice Co.* 84 N. Y. 488 ; *Hoffman* v. *Union Ferry Co.* 68 N. Y. 385 ; *Lockwood* v. *Chicago & Nothern R. Co.* 54 Wis.

These cases involved the doing of a lawful act in an unlawful manner, and they fully sustain the rule as we have declared it. They are distinguishable from the class of cases relied on by the counsel for the plaintiff, which involved the doing of a *wrongful or unlawful act* which caused the injury.

For the reasons stated we are of opinion that, to maintain this action the plaintiff must prove that the defendants' stationary steam engine, from its location, improper construction or insufficient repair, was in fact a nuisance to him, or that the defendants were guilty of negligence, by reason of which fire was communicated to the defendants' mill and from that to his buildings.

Other questions were raised and fully discussed at the argument, and, as they may arise if the case is again tried, it is proper that we should decide them now.

It is claimed by the counsel for the defendants, that, by the contract between them and Pierce, he was to have the possession and control of the mill, and must make the repairs while in possession performing his contract ; that he was in effect their lessee with the duty of making repairs on the premises during his lease, and therefore the defendants are not liable for an injury caused by the use of the mill. By the contract between the parties their relation appears to have been as claimed for the defendants.

If the stationary steam engine and mill were not in fact a nuisance when they were delivered by the defendants to Pierce to be used by him in the performance of his contract, and the plaintiff's injury was occasioned by the negligence of Pierce in not keeping them in proper repair, or in their use, the defendants are not liable. But if they were in fact a nuisance when delivered to Pierce, and by the contract were to be used by him substantially as they then were, and were so used, and the injury resulted from the use, the defendants are liable. *Lowell* v.

*Spaulding*, 4 Cush. 277; *Canton* v. *Eastern R. R. Co.*
Mass. not yet reported; *Mellen* v. *Morrill*, 126 Mass. 545;
*Ryan* v. *Wilson*, 87 N. Y. 471; *Swords* v. *Edgar*, 59 N. Y. 28.

The contention of the defendants that, by their charter they
were authorized to erect and maintain a steam mill on their own
land in Bethel, and that thereby they are not subject to the stat-
utory provisions in regard to stationary steam engines, cannot
aid them.   A fair construction of their charter gives them the
same rights to erect and use such a mill as an individual has,
and in no way exempts them from the police regulations for the
safety of the public.   Nor does their charter authorize them to
erect their mill at such a point, or construct and use it in such
a manner that it will be a nuisance to others in the enjoyment of
their property.   *Commonwealth* v. *Kidder*, 107 Mass. 188;
*Bellemont and Ohio Co.* v. *Fifth Baptist Church S. C. U. S.*
not yet reported.   See Albany L. J. June 23, 1883, p. 488.

The plaintiff was permitted to prove by Winchester and Town,
on cross-examination, that the defendants' mill caught fire in
1875, the year before it was burnt.   It did not appear by the
statements of the witnesses that the fire in 1875 was communi-
cated to the mill by the use of the engine in any way.   The
point where it was discovered would not authorize that inference.
The evidence did not properly tend to show the capacity of the
furnace flues, or chimney, to communicate fire to the mill by
their use.   It was not admissible on the authority of the cases
that hold, that, where the issue is whether the fire was set by a
railroad locomotive, the same locomotive under similar circum-
stances at other times had emitted sparks and coals and set fire.
If it appeared that the fire was communicated to the mill in
1875, by the use of the engine, we think it would be admissible.
But on the authority of *Parker* v. *Publishing Co.* 69 Maine,
173, the evidence was irrelevant, and calculated to mislead the
jury, and should have been excluded.

*Exceptions sustained.*
*New trial granted.*

APPLETON, C. J., WALTON, VIRGIN and SYMONDS, JJ.,
concurred.

BARROWS, J., concurred in the result.