Third Department, June, 1938.
(June 22, 1938.)

Jacob S. Schneider, as Administrator, etc., of Helene Elizabeth Schneider, Deceased, Respondent, v. Village of Lake George, Appellant; Alden Shaw and Arnold Shaw, Defendants.

Rhodes, Crapser and Heffernan, JJ., concur; Hill, P. J., dissents, with an opinion in which Bliss, J., concurs.

Hill, P. J. (dissenting). Plaintiff has recovered a judgment against the defendant village for damages arising from the death of his intestate and for her conscious pain and suffering. The action was brought against the village and the owner and the pilot of a motor boat which struck and injured the decedent while she was bathing in Lake George off the beach maintained by the village. The jury returned a verdict of no cause of action against the owner of the boat and its pilot, but the record does not disclose whether it was determined that the pilot was free from negligence or that the intestate was negligent.

The defendant village maintains a park of about one and six-tenths acres of land with about 300 feet of frontage along the westerly shore of Lake George. The easterly boundary of the park and of the village is the high-water mark of the lake. The upland of the park was equipped with the usual paraphernalia for the entertainment of children and adults. A bathing beach had been cleared along the shore and under the adjacent waters. A dock forty-two feet wide extended eighty-nine feet easterly from the shore line at a height of from two to four feet above the water level. On its northerly side near the easterly end there was a diving board and a floating diving dock was moored in the lake in that vicinity. A considerable portion of the southerly side of the dock was occupied by slips and mooring places for motor boats, some of the boats being operated for hire. The land for the park was conveyed to the village and was accepted by its board of trustees upon the condition that a board of park commissioners should have charge and control, and that there should be maintained a suitable dock for public use and at least fifty feet of shore line reserved for a bathing beach, and that slips should be maintained and rented for the purpose of docking small boats, the rental to be applied " solely to the maintenance of the park."

Decedent, nearly fifteen years of age, dived from the end of the dock, swam out about seventy-five feet easterly into the lake, and was floating with only her face visible above the waters when she was struck and fatally injured by a motor boat that had left one of the slips owned by the village. She with her father and two younger children, all dressed in bathing suits, had gone to the park. The transaction is described by her father. " We were all playing tag around

there for a while, and there was a boat just went down the lake, and Betty said, ' let's get the rollers, Daddy ' (by this she meant to float in the swells produced by the passing boat); there were some other children playing about the dock, I don't know who they are, and I said, ' I will be with you in a minute.' She dove in, and it was less than a minute afterwards that this thing happened."

The complaint imputes to the village negligence arising from nuisance for constructing and operating the dock and bathing beach and for permitting children to use its facilities "when moving speed boats and launches were invited and permitted to operate, without restraint, in and over the immediate waters and to and from the docks, where children were invited to swim * * * and take part in other aquatic sports " and for inviting and permitting motor boats to go to and from the docks while children were permitted to swim in the waters, and for negligence in failing to provide adequate and competent police, life guards and attendants and for failing to erect adequate signs warning children of the dangers incident to swimming while motor boats were being operated, and for failing to warn operators and pilots of boats of the presence of children in the water. The court in its charge did not limit the jury to any particular act or structure upon which the nuisance or negligence could be found, but permitted the jury to find negligence or a nuisance from the general situation as is indicated from the following excerpt: " It is for you to determine from the evidence whether or not the Village did operate there in a negligent manner this public park, bearing in mind the definition of negligence which I have given you, and whether the way things were conducted there, the way matters were arranged, the way it suffered and permitted activities to go on, whether that whole situation paints a picture of public nuisance by reason of the way and manner things were regulated or permitted to exist. Was it a situation dangerous to the public, a situation which worked harm? Those are questions for you to decide on the evidence in accordance with these rules of law," and further, "and it [the village] was likewise chargeable for any act or omission which was negligent or which constituted nuisance in so far as it had to do with the operation of these boat slips actually and physically, which were south of the main dock."

The motor boat which struck and injured decedent had been moored in a slip leased to its owner by the village and had started therefrom on a trip down the lake. However, it was so operated that the jury determined, either that the pilot was not negligent or that the decedent was negligent, and that there was no liability to plaintiff on the part of the pilot or the owner. Slips belonging to private individuals were maintained along the adjacent shore and motor boats moored in and starting from these were operated in the same place and way as those docked in the village slips. The waters of Lake George and the lands thereunder were neither owned nor controlled by the village but by the State of New York. The board of trustees of a village, " except when prohibited by reason of laws of the United States," may adopt rules and regulations with respect to the speed and operation of boats upon any waters within the village and upon " any waters or waterways adjacent, to a distance of fifteen hundred feet from the shore." (Village Law, § 89, subd. 63.) The entire subdivision which is paraphrased above was read by the court to the jury and they were charged that negligence or the maintenance of a public nuisance should not be charged against the village by reason of the failure of the board of trustees to exercise the power given

by the statute. However, the court did charge, " I say to you further that the mere fact that the village did not own the waters of the lake or any part thereof, or any of the land underneath the waters of the lake, does not excuse the village in the exercise of reasonable care and prudence, in taking such means and measures as a reasonably prudent and ordinarily careful man would have taken to guard against injury to any person." Thus the jury was permitted to reach a verdict by guess and surmise that if the village had not leased the slip to the owner of the motor boat which caused the injury or had promulgated rules and regulations as to the operation of the boats, it would not have happened. Assuming without deciding that the operation of motor boats in the waters where persons young and old were bathing constituted a public nuisance, yet the village is not chargeable therewith. " Passive acquiescence in allowing a nuisance outside of a street which may cause injury to one using the street is not sufficient to impose liability upon a municipal corporation * * *. To permit a recovery against municipal corporations for injury resulting from acts of third parties * * * upon land outside of a street, which results in injury to one on a street, would constitute an unjustifiable extension of liability of municipal corporations. * * * It is urged that as the defendant had the power to suppress the nuisance, it is liable for failure to exercise such power. That is only another way of saying that the village was under a duty to act as an individual would be required to act under like circumstances. No such duty exists. It may be that a village has the power to suppress a nuisance even though there be no ordinance prohibiting the particular nuisance. We do not pass upon that question. * * * It is sufficient for the purpose of this decision to hold that no duty existed on the part of the village to suppress the nuisance in question created by third parties outside of the street." (*Whittaker* v. *Village of Franklinville*, 265 N. Y. 11, 17, 18, 19.) The defendant village was without power to suppress the nuisance, if it was a nuisance to operate the boats near the shore, as its board of trustees had not determined to take control of the waters within 1,500 feet of the shore line, as permitted by the Village Law. The leasing of the slips for the mooring of motor boats was not even the remote cause of this accident as a boat starting from another slip or location and being driven over that portion of the lake which the boat in question used, could have caused the accident.

The defendant owed a duty to decedent to provide " an adequate degree of general superintendence of recreation " at this park and beach. (*Peterson* v. *City of New York*, 267 N. Y. 204.) Decedent and her family had spent the summer of 1936 and a few weeks in 1937 to the time of the accident, at Lake George and had used the park, dock, bathing beach and waters for their amusement. On this occasion the decedent, fifteen years of age, was accompanied by her father and received his specific permission to dive into the lake. This he gave with full knowledge that motor boats were navigating the adjacent waters; she likewise knew this fact. It is not enough to sustain this verdict that the jury would have been justified in finding that the safety of the general public would have been better protected if the village had provided additional guards and posted more printed warnings. The facts must sustain the finding that additional guards or warnings would have tended toward the safety of decedent and that the failure of the village to provide these was negligence, unless it should be determined that the maintenance of the dock and the clearing of the bathing beach created a

nuisance because of the use of adjacent waters by the motor boats, and the court charged that a verdict could not be returned against the village because it " actually, expressly or impliedly, invited members of the public to come into this park, who could go from there down to the shore, and from there down into the water for the purpose of swimming, that the maintenance of a swimming place and bathing beach at this particular spot and place did not constitute a nuisance, or any public nuisance. It was the very opposite of that. Nuisance, if there was one, has been proved in this case, if at all, by reason of the way and manner that those operations, to which I have just referred, were suffered and permitted by the action of the village through its constituted authorities." It is difficult to conceive how any amount of general superintendence provided by the defendant could have given better protection than parental interest and supervision, or could have brought home to the decedent more information than she had concerning the danger incident to being struck by a motor boat and its revolving propeller, or to conceive that a guard would have countermanded the permission given by the father.

The judgment should be reversed on the law and facts and the complaint dismissed.

Bliss, J., concurs.