RUTH V. MORSE, Appellant, v. THE STATE OF NEW YORK, Respondent.

(Claim No. 25464.)

Third Department, July 2, 1941.

*Gazan & Caldwell* [*Julius Applebaum* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General* [*James H. Glavin, Jr.,* and *Burns F. Barford, Assistant Attorneys-General,* of counsel], for the respondent.

BLISS, J. The claimant, a young lady of about twenty-eight years, was injured on Sunday, January 29, 1939, while skiing on the novice ski slope at the Bear Mountain State Park. The sports area in this park was located just south of Bear Mountain Inn and comprised about four acres. The runs for skiers, sleds and toboggans ran from west to east down the mountain side along the westerly side of this area and flattened out on the level area toward the east. Most northerly was the amateur ski run which extended the farthest up the mountain side. Next on the south was the novice ski slope which was about thirty-eight feet wide with a one-hundred foot run above it. Adjoining and parallel on the south was the sled run ten feet wide and from one hundred and fifty to two hundred feet long. Immediately adjacent to the sled run on the south were four toboggan slides. The only separation between the sled run and the novice ski hill was a mound of earth ten feet north of and parallel with the toboggan slides. This mound was about four and one-half feet wide at the base, two and one-half feet wide at the top and forty feet long. It began at the top of the sled run. Below the end of this embankment there was no barrier or obstruction of any sort to keep the sledders and skiers from crossing each other's paths.

There were from 3,000 to 4,000 people in the park's sports area at the time, skiing, sledding, tobogganing and watching an exhibition of ski jumping taking place on the amateur run. Claimant had put on her skis at a point midway of the novice slope and started

down the slope, with her skis in a snowplow position, when she was struck from behind by a sled loaded with two or three young men. She was thrown to the ground and suffered severe injuries. The only eyewitness who saw the sled before it struck her said that it came very fast from a point near the top of the sled hill. This witness also saw other sleds coming from the same place and " going in all directions," some of them toward the crowd and others down the novice ski slope. Apparently the sled struck claimant at a point somewhat below or down the slope from the lower end of the mound.

Practically all of the experts sworn on the trial agreed that there was an accepted standard of care in the construction and maintenance of sports areas which recognized that sledding and skiing should not be permitted together and that they should be kept separate by barriers, policing or other suitable means. The State itself had issued a pamphlet on " Community Organization for Winter Sports," which, under the head of " Avoiding Accidents," stated: " Open spaces for skiing should never be used for coasting with sleds or toboggans, unless carefully policed and areas for the different sports separated by ropes or other barriers." When mingled, the sports of sledding and skiing created added dangers not inherent in each sport itself.

Although there had been a great increase in the number of persons indulging in outdoor winter sports, especially skiing, during the past few years, the State had made no changes in the location or protection of the novice ski slope at Bear Mountain Park during that time. There was proof that prior to this accident sleds many times went down across the novice ski slope. Written accident reports on file at the park showed that on one occasion a sledder had collided with a skier; on another a skier on the novice hill had run across the sled hill onto the toboggan slide and been struck by a toboggan; on a third that a sled came down the ski hill and ran onto the toboggan slide; and on a fourth that a sled had run from the sled run upon the toboggan slide.

The proof as to policing showed that there was a man stationed at the top of the sled run to start the sleds and that there were signs to the effect that the sled run was for sleds only and that sleds were not permitted on the ski jump. Other policemen and ground maintenance men were about the area principally keeping the crowd back from the amateur ski jump, but there were none on the novice ski slope.

There is no question but that the State did not follow the generally accepted safe practice when it permitted sledding and novice skiing on the same hill and that such neglect may be the basis of

liability. (*Schneider* v. *Village of Lake George*, 254 App. Div. 909; affd., 280 N. Y. 507.) While it is true that there was an inadequate barrier for a short distance along the upper portion of the sled run, this did not keep the two sports apart. And with the large number of persons then indulging in these sports, the proximity of the two was bound to produce a certain number of serious accidents — serious because of the speed at which the participants move. (*Tantillo* v. *Goldstein Bros. Amusement Co.*, 248 N. Y. 286.) The previous accidents gave the State ample notice that such accidents were to be expected. Nor can the State escape liability upon the plea that its signs gave adequate warning to the participants. It should have known that such signs are not sufficient. In every group such as it invited to here assemble there are those who cannot resist the temptation of a sled run down the more open ski slope. Sledding is often indulged in by the young for the thrill of its speed and danger. To them signs mean little. The stronger the prohibition, the greater the temptation. (Restatement, Negligence, § 302.) Then, too, it is common knowledge that coursing sleds are not easily controlled, while novice skiers are notoriously unable to direct their own movements. The location of these two runs made such serious accidents not only possible but highly probable. The State should have practiced the admonition which it gave publicly and freely to others and kept these sports separate.

The claimant was a paying guest of the State. She was in a place where the State invited and directed her to be. She might properly believe that she would be safe there and that she might practice skiing without being subjected to additional hazards. There was a certain amount of danger in the sport in which she was indulging, but the risk of being struck by a speeding sled was not part of it. That danger came from the State's failure to keep the sports separate. (Cf. *Murphy* v. *Steeplechase Amusement Co.*, 250 N. Y. 479.) The State, in the exercise of reasonable care, should have foreseen such situations as this and guarded against them.

The judgment of the Court of Claims should be reversed upon the law and facts, new findings made as to negligence and the matter remitted to the Court of Claims for a determination of the amount of damages.

HILL, P. J., CRAPSER, HEFFERNAN and SCHENCK, JJ., concur.

Judgment reversed on the law and the facts, with costs, and the matter remitted to the Court of Claims solely for a hearing and determination as to the amount of damages.

The court reverses the following findings of fact contained in the decision of the Court of Claims: 9, 10, 14, 15, 21, 22, 24, 26, 28, 29, 30, 31, 32, 33 and 34.

The following conclusions of law contained in the decision of the Court of Claims are disapproved: 2, 3 and 4.

The court makes and finds the following requested findings of fact submitted by the claimant to the court below: 35, 44, 45, 47, 48, 49, 50, 55, 56, 57, 58, 61, 62, 63, 64, 68, 69, 71, 82, 84, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97 and 98.

Claimant's requested conclusion of law No. 1 is hereby made, approved and adopted.

The following requested findings of fact submitted by the State to the Court of Claims and made and found by that court are hereby reversed: 15, 16, 17, 18, 20, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40 and 42 to 54, both inclusive.

The following conclusions of law submitted by the State to the Court of Claims and made and adopted by that court are hereby disapproved: II, III, IV and V.