Alexander Del Giorno, J.
This is an action brought by Florence Duelk to recover damages for injuries sustained by her as a result of the alleged negligence of the State, and by her husband William Duelk to recover for loss of services.
On August 18, 1954, the claimants drove their car to Captree State Park in Suffolk County, New York. Upon their arrival, they paid the required toll and entered the park. After they had had their lunch in the car, Mr. Duelk left the car to go fishing, Mrs. Duelk remaining in the car.
Their automobile was parked facing south, up against the curb which bordered the Overlook Parking Field on the south. Between their car and the next car, which was parked to the west, there was a distance of from three to four feet. The parking field is an area paved with concrete and bounded by a concrete curb about seven inches to eight and one-half inches on all sides, except at the entrance and exit.
Between 1:30 p.m. and 3:00 p.m. of that day, which was sunny, Mrs. Duelk, who was 58 years of age, alighted from the left side of the car and proceeded to the ladies’ room, which was located at a point about 100 feet from her car in a westerly direction along a path parallel with the southerly curb. She was wearing rubber soled and heeled shoes, with a one-quarter inch heel, the top being made of woven canvas. At that time, there were wooden ramps running into the ladies’ room, for concrete work was being done in front of the premises. These ramps straddled the concrete work. Upon leaving the ladies’ room, she walked back along the path to a point between her car and the car parked at a distance of three feet to three and one-half feet to the west of it. With her left foot, she stepped down from the curb bordering the path into the parking field. At the time she stepped from the curb, her foot came into contact with what she described as a “ lump ”, or a jagged mass of concrete, under the curb and in the shadow of the ear parked next to the claimants’. As a result, she fell, and after the fall, she was upon the ground with her feet facing east.
That there was present a projection consisting of a patch of concrete roughly circular in form and with uneven edges, is undisputed. There is a variation, however, in the testimony of the witnesses called on behalf of the claimants with respect to *540 the distance of this mass from the curb, its height and width. All agree on its length alone, which was set at about seven inches. The claimants testified that this mass was a few inches from the curb, was two to two and one-half inches wide and three to four inches high. Claimants’ witness McCarthy, who at the time of the accident was employed by the State as a traffic and park patrolman, first described the mass as being two feet from the curb and two inches in height, and then, after having had his memory refreshed by an inspection of the police report, stated that it was four feet from the curb and from one inch to one and one-quarter inches in height; claimants ’ witness Abrams, the superintendent of the park, testified that the mass was three to four feet from the curb, and one inch in height.
The said witness McCarthy related that when he had been called to the scene of the accident by a lifeguard, he found Mrs. Duelk sitting on the pavement between the two automobiles about two feet from the curb, and that she told him she had tripped over the mass of concrete, pointing it out alongside of her. In addition to being a traffic and park patrolman, he was a high school teacher of general science at East Islip, Long-Island. He stated that at the time of the accident, the sun was in the southwest quadrant and, as the sun then stood, an object such as a car would cast a shadow in a generally northeast direction. He remembers no distinction in color between the concrete flooring and the concrete patch. He testified that the car next to claimant’s cast a shadow on the ground towards claimant’s car.
The witness Abrams stated that he had been the park superintendent since April, 1954, that the park was opened on June 12, 1954 and that he made a personal inspection of all facilities at least once a week. He said that when he arrived upon the scene, at about 2:30 p.m., he found Mrs. Duelk lying-on a stretcher between the two automobiles, about four feet north of the curb. He stands alone among- the witnesses in his recollection that there was a stretcher at the scene. Mrs. Duelk told him of her accident, pointing- out to him the mass of concrete. This mass of concrete was removed immediately after the accident by park workers under his supervision. He made out a written report of the accident which did not include a description of any measurements he may have made.
Mr. Duelk testified that at the time of the accident, he was called from his fishing- by a young- girl and found his wife sitting- on the ground; that his wife was removed from the scene to the hospital in a jeep, and at the hospital was placed in a wheel chair.
*541 Mrs. Duelk was taken to Southside Hospital at Bay Shore, New York, and Dr. Thomas R. Counihan was summoned. He had been her family physician since June 8, 1954, and between that date and the date of the accident had seen her twice. After treatment, she was removed to her home. Dr. Counihan stated that she suffered a bimalleolar fracture of the left foot, a sprained left elbow and abrasions of the right knee; that the left tibia and fibula had been broken off about one-quarter inch from their lower extremities, pulling apart and stretching the ligaments binding the ends of the tibia and fibula to the lower portions of the foot. He testified that Mrs. Duelk claimed to have suffered continuous pain for about seven weeks. Two successive casts were applied, the first on the day of the accident and the second on October 20, 1954. After the removal of the second cast, she used crutches for several weeks, then two canes and later one cane in walking. He stated that in his opinion her limp, with intermittent pain, would be permanent. On cross-examination, he stated that on the two occasions he had examined Mrs. Duelk prior to the accident, she was suffering from a heart condition and that she was prone to dizzy spells. In September, he treated Mrs. Duelk for pneumonia, which the injury did not cause but to which the injury may have contributed.
On redirect examination, Mrs. Duelk testified that she had no dizzy spell on the day of the accident.
The claimant Florence Duelk received medical and other care and attention, for which the claimant William Duelk paid.
At the end of claimants’ case, the State moved to dismiss, then presented no proof and again moved to dismiss at the end of the entire case.
The claimants as paying guests of the State were invitees and were entitled to the exercise of reasonable care on the part of the State. The proprietor of a place of public amusement owes to his patrons the duty of maintaining and operating its facilities with reasonable care. (O’Toole v. Thousand Is. Park Assn., 206 App. Div. 31; Morse v. State of New York, 262 App. Div. 324; Van Dyke v. City of Utica, 203 App. Div. 26; Shields v. Van Kelton Amusement Corp., 228 N. Y. 396.) While he is not an insurer of the safety of those who patronize his establishment, he must make the place as little dangerous as such a place can reasonably be made. (Ingersoll v. Onondaga Hockey Club, 245 App. Div. 137.)
Although the claimant may have assumed the risks reasonably incident to visiting the park, parking the car and necessarily walking upon and about the concrete flooring, she had the *542 right to assume that no risk would be incurred from an unsafe condition of the floor of which she had no knowledge, but which might reasonably have been anticipated by the State. (Barrett v. Lake Ontario Beach Improvement Co., 174 N. Y. 310.)
The record discloses that claimants’ witness Abrams had been the superintendent of the park since April, 1954, that it was his duty to regulate the use of the park facilities and to maintain the park in a safe condition. He stated that he made a personal inspection of the park facilities at least once a week, that the park opened on June 12, 1954, and that he could not recall any masonry work having been done there since the opening date. Such inspection by Mr. Abrams certainly would have brought to his attention the mass of concrete over which Mrs. Duelk fell. The State was under a positive duty to take effective means to remedy this situation created by it. The only step taken to correct the existing condition was to remove the mass of concrete immediately after the accident. Such afterthought obviously did not constitute the exercise of the degree of care on the part of the State commensurate with proper and adequate maintenance.
There is undoubtedly disparity in the testimony of the witnesses as to the distance of the mass of concrete from the curb, and its height. The court finds, however that the existence of the mass of concrete, its position and its characteristics were such as to constitute negligent maintenance of the park by the State.
While it is true that her physician had found upon examining Mrs. Duelk on two occasions prior to the accident that she was suffering from a heart condition and that she was prone to dizzy spells, she has testified that she had no dizzy spell on the day of the accident. In the absence of proof to such effect by the State, the court cannot and will not indulge in the speculation suggested by the State in its brief to the effect that “ the possibility and probabilities are that she sustained a dizzy spell at that time and fell to the floor of the parking field sustaining the injuries for which she and her husband are suing to recover damages.”
The claimants made out a prima facie case, thus placing upon the State the duty of going forward with an explanation. (Seligson v. Victory Pool, 187 Misc. 1067; Silverstein v. Camp David, 59 N. Y. S. 2d 6; Tortora v. State of New York, 269 N. Y. 167; Neuhoff v. Retlaw Realty Corp., 289 N. Y. 293.) The State failed in its duty to come forward with its explanation of the accident. The State actually interposed no evidence at all-
*543 As a result of the accident, claimant William Duelk was obliged to and did expend the sum of $267.68 for medical attention for his wife. The claimant William Duelk as a result of the accident was deprived of the services of his wife during her disability and by reason thereof, and for loss of consortium, he was damaged.
The State having failed to maintain the parking field in a reasonably safe condition for its intended use, and the claimants being free from contributory negligence, the court finds and decides that the claimant Florence Duelk is entitled to judgment herein against the State in the sum of $4,000 and the claimant William Duelk is entitled to judgment herein against the State in the sum of $1,767.68.
All motions heretofore made on which decision was reserved are hereby denied.
This constitutes the decision of the court in accordance with the provision of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.