RICHARD SANDERS, an Infant, by ANDREW SANDERS, His Guardian ad Litem, and Another, Respondents, v. JACOB RAND REALTY CORPORATION, Appellant.

First Department, June 21, 1934.

*Robert H. Charlton* of counsel, for the appellant.

*Richard C. Cotter* of counsel [*Robert X. Kuzmier,* attorney], for the respondents.

GLENNON, J.   This is an appeal from a judgment for the plaintiff Richard Sanders, an infant, based upon the alleged negligence of the defendant, and for the plaintiff Andrew Sanders, the father, for loss of services.

The accident happened in the areaway in front of premises Nos. 7–9 West One Hundred and Eighth street in the borough of Manhattan, city of New York.   The areaway extends about five feet beyond the building line into the street.   A fence extending the full length guards it from the street, and entrance to the basement is gained by a stairway from the sidewalk at the westerly end of the building.   For a period of upwards of thirty years prior to the accident the areaway was used with the consent of the municipal authorities.

The plaintiff Richard Sanders was about three and one-half years of age on May 28, 1929, when he was injured.   In the afternoon of that day, between five and six o'clock, Richard accompanied his sister Adeline, who was then six years of age, from his home on West One Hundred and Ninth street to the premises on One Hundred and Eighth street.   She said her purpose was to return a wrench, which her father, Andrew Sanders, had borrowed from the superintendent of defendant's premises.   There was no one present in the superintendent's apartment, so she left the wrench on a box in the hallway.   In the basement she picked up a ball, which had a few days before rolled from the street, where she was playing, down into the lower part of the building.   As she was about to leave the building, she said that Andrew pushed the ball out of her hand; that it went into the alleyway in front of the house; that he ran after it, and " he slipped, he done something — I do not know — there must have been a rock or something on the ground — I do not know — but he slipped and his foot hit part of the wood that was under it and the sink fell."

The sink, referred to, was one of three, which had been placed in front of the windows in the areaway and were used as flower boxes. They stood on platforms which were braced to the window, and each was supported underneath by a four by four stud. The braces consisted of iron straps fastened to the window sills and the platforms. The platforms were spiked to the studs which supported them. That part of the areaway was fenced off from the doorway leading into the basement by what was referred to as a " gate " about three feet high which was wedged in between the building and street wall. After the accident it appeared that the " gate " had been knocked down. Apparently, up until the happening thereof, it was still in position. The only witness called by plaintiffs to support the causes of action was Adeline, who at the time of the trial was ten years of age.

The defendant's version of what transpired was entirely different. One Henry Nolan, formerly an elevator operator employed by defendant, and who, incidentally, was a son of the superintendent, testified, in substance, that he heard children's voices in the areaway; that he went to the entrance; he saw the little boy tip-toeing on top of the box with his hands raised upward, and almost simultaneously therewith the box fell down and Richard's leg was caught under it. His father, George Nolan, said that he was not acquainted with Andrew Sanders, the father of the children, and, furthermore, that he had never loaned a wrench to him. He described in detail how these flower boxes and the " gate " were constructed. Charles Rand, an officer of defendant corporation, said, in substance, that he had occasion to visit the premises every day; that he ordered the material for the superintendent to construct the flower boxes; that after they were built he made an examination of them and found that they were firm.

Without exception, the court charged the jury " that the little boy was not an invitee upon the premises of the defendant under the circumstances narrated but was, at most, a bare licensee," and, in substance, and also without exception, that defendant had no duty of " active care " to a bare licensee. Furthermore, he charged " that the only obligation in the case of a bare licensee is that the landlord refrain or abstain from inflicting intentional, wanton or willful injury upon him." Under the law as charged by the court, the plaintiffs were not entitled to a recovery. There is no evidence in the record to indicate that the defendant was guilty of inflicting intentional, wanton or willful injury upon the boy. Thus, in *Tymon* v. *M. L. S. Construction Co.* (262 N. Y. 161), Judge CRANE said: " Under the facts we find no failure of duty upon the part of the defendant to maintain this areaway in a reasonably

safe and proper condition for all the uses which he had reason to anticipate, and for this reason we must reverse the judgment below, and dismiss the complaint." The principles of law laid down in that case apply to the facts under consideration here. The defendant was well within its rights in permitting its superintendent to construct the flower boxes in the manner in which he did, and it had no reason to anticipate that an accident of the type described would happen.

The judgment of the Trial Term should be reversed, with costs, and the complaint dismissed, with costs.

FINCH, P. J., MERRELL, TOWNLEY and UNTERMYER, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.