JOHN J. TULLY, JR., Administrator, etc., of ESTHER TULLY, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23917.)

FRANCIS BURNS, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23919.)

SARAH GROBER, as Administratrix, etc., of MARTIN H. GROBER, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23920.)

**Court of Claims, December 27, 1938.**

*Carter & Conboy,* for the claimant John J. Tully, Jr., as administrator, etc.

*James J. Armstrong,* for the claimants Francis Burns and Sarah Grober, as administratrix, etc.

*John J. Bennett, Jr., Attorney-General [Joseph I. Butler, Assistant Attorney-General,* of counsel], for the defendant.

MURPHY, J.   Shortly before twelve-thirty o'clock A. M. on November 5, 1934, the claimant Francis Burns, returning by automobile from the village of Mechanicville, N. Y., came to the village of Waterford, N. Y.   He came from the north by way of the New York State public highways known as United States Route No. 4 and New York State Route No. 32.   He entered the village at the northerly end of Third street, a village public street that forms a direct connection with United States Route 4 and New York State Route 32, and for some distance southerly and to Broad street another village public street forms part of the said highway routes.

He proceeded southerly on Third street and, failing to observe the signs posted at the intersection of Third and Broad streets, he continued southerly on Third street to the New York State Barge Canal Terminal property which adjoins the southerly end of Third street, crossed the Terminal property, passed over the dock wall of the Terminal and into the canal.

Burns at the time had with him in his automobile Martin H. Grober, a Miss Tully and a Miss Baxter as his passengers; Grober and Miss Tully were drowned; claimant Francis Burns and Miss Baxter were rescued and survived.

Claims have been filed by the respective administrators of the estate of Miss Tully and Grober for negligence causing their respective deaths; a claim has been filed by the claimant Burns for personal injuries and property damage; no claim has been filed by Miss Baxter.   The three claims were tried together.

The claimants' contention is that the proximate cause of the occurrence was the lack of proper barricades, lights or signs warning and giving notice to travelers using Third street of the presence of the Barge Canal and the dangers created by it.   They assert that the State in the exercise of reasonable care should have erected and maintained suitable barricades, lights and warning signs and that its failure so to do constituted actionable negligence.

Briefly, the history of the occurrence is that on the night of November 4, 1934, at about nine-thirty o'clock, Burns with Miss

Tully, Miss Baxter and Grober in Burns' automobile left the city of Watervliet, where they all resided, for the city of Mechanicville, a city some fifteen miles north of the city of Watervliet. On the way north the automobile was operated by Burns and in going through the village of Waterford, which is north of the city of Watervliet, Burns' way was directed by Grober who it would appear was more familiar with the village thoroughfares than Burns. Burns had been in Waterford on one occasion previously only. The weather on the way was clear and the party arrived at Mechanicville at about ten-thirty o'clock. They went to a local tavern where they partook of some beer and sandwiches. There is no evidence, nor is it suggested, that any of the party was intoxicated. After a stay of about an hour and at about eleven-thirty o'clock they left the tavern intending to return to their homes in Watervliet. A fog had settled; its presence is not disputed; as to its density at the time and place of the occurrence the witnesses do not agree. Returning, the automobile was operated by Burns. Miss Baxter sat in the front sear, Miss Tully and Grober were in the rear seat. They proceeded southerly on United States Route 4, New York State Route 32, to the northerly end of Third street in the village of Waterford where Third street meets and joins United States Route 4 and New York Route No. 32. On entering Waterford, Burns followed his own way; he received no direction from Grober; he testified he needed none; he followed a different way from the one he had taken going north. He traveled south on Third street; he reached the intersection of Third and Broad streets, as before stated; he failed to see the signs that were posted at the intersection, signs that showed the highway route and guided the way to Albany and Troy, and instead of turning into Broad street he continued south on Third street to the Terminal property, crossed the Terminal, passed over the Terminal wall and into the canal.

The record describes the area and the existing physical conditions as follows: Third street in the village of Waterford is a public street and thoroughfare owned and maintained by the village; it begins at a point about forty feet north of the dock wall of the New York State Barge Canal Terminal; it runs straight northerly to the north boundary line of the village, a distance of some ten blocks; Broad street, an intersecting street, the street that Burns should have taken to reach Watervliet, runs east and west; it is about 1,000 feet north of the north line of the State Terminal property. The southerly part of Third street from Broad street south is not a part of any Federal or State highway route or system; the northerly part of the street from Broad

street to the north village line forms a part of New York State Route 32 and United States Route 4. Both north and south of Broad street, Third street is paved with a black material; the roadway between the curb lines is twenty-eight feet.

At the intersection of Broad and Third streets there is maintained a traffic control light; it was in operation on the night of the occurrence when Burns crossed the intersection. At the southeast and the southwest corners of the intersection the village maintained two ornamental street lamps supported by metal poles; the lamps were lighted; there was attached to the metal pole on the southeast corner a guide or direction arrow pointing east on Broad street and reading " Troy " and the usual type of highway route marker reading " U. S. 4," and there was attached to the metal pole on the southeast corner a guide or direction arrow pointing west on Broad street and reading " Albany," and the usual type of highway route marker reading " Route 32." South street is another public street in the village; it is south of Broad street; it is the last intersecting street before the State Barge Canal Terminal property is reached and Third street descends on a slight grade from South street to the Terminal property. The area between the southerly end of Third street and the dock wall of the Terminal is of hard gravel material similar in color to and approximately level with the Third street pavement. The top of the dock wall is about seven or eight feet above the water level of the canal; along the dock wall the State maintained a number of snubbing posts the tops of which were painted white and two of them were in line with Third street. Third street on both sides was occupied by buildings and street lights were provided along the street as far south as South street. These street lights, however, because of fog, gave little light. There was also a light attached to the building on Third street and the Canal Terminal and there was a row of street lights along the Canal Terminal east of Third street. On the southwest corner of South and Third streets the village maintained a sign reading " End of Street;" it was placed on a pole attached to which, by means of a bracket, there was an electric street light also maintained by the village.

On the Terminal property and on a line with Third street the State maintained a derrick consisting of a vertical mast secured in position by two stiff legs in concrete foundations. The foundations were two feet ten inches square; one was within the line of Third street, about seven feet east of the curb line; the other was west of the west line of the street.

The lands and property at the south end of Third street, it is conceded, were owned by the State of New York and comprised

part of the Barge Canal Terminal. There is some testimony that for about twelve or fourteen years vehicles had been driven within the area, but likewise it appears that such use was limited to those having business with the State or with vessels moored at the dock. There is no evidence that these lands were used for general travel purposes and the State Department of Public Works is wholly without power to permit such use. (*Splittorf* v. *State*, 108 N. Y. 205; *Donahue* v. *State*, 112 id. 142, 145.)

Recovery can only be had by the claimants upon proof that the State failed in some duty owing them that resulted in their injury. Counsel for the claimants urge that it was the duty of the State to barricade or in some manner inclose its property that entry upon it might be prevented, or that warning signs should have been provided by the State that would give notice of the existence of the property and the attending danger.

The liability of the State for damages arising out of the maintenance and operation of its canal must be measured by the same standards and rules that apply to individuals. (Canal Law, § 47.) The rule is firmly imbedded in the law that an individual owner may use his property as he may decide and, in the absence of exceptional circumstances, he will not be responsible for injury sustained by one who enters upon it without right or invitation.

This rule is clearly stated in *Beck* v. *Carter* (68 N. Y. 283) in the following language (at pp. 289, 290):

" The owner of land is not bound by the common law to fence his land, or in any way to mark the boundaries of his possession. (*Wells* v. *Howell*, 19 J. R. 385; *Stafford* v. *Ingersol*, 3 Hill, 38.) He may leave it open, and any person entering thereon without permission is a trespasser, and it is no excuse that the entry was made innocently and by mistake, and the rule is the same in respect to the traveller on the highway, who, without necessity, goes therefrom onto the adjoining land. The owner of land may also make an excavation on his own premises, and is not bound to fence it for the protection of persons not lawfully on the land.

" This is the general rule, and rests upon the right of the owner to use his property as he pleases, and in the absence of special circumstances if a person travelling on a highway deviates therefrom and falls into a pit or excavation on the adjacent land the owner is not responsible for the resulting injury."

Though the above case may be a little ancient, the doctrine it announces has never been disturbed or disapproved. (*Bennett* v. *City of Mount Vernon*, 243 App. Div. 119, 121.)

This case in principle is not unlike *Binks* v. *South Yorkshire Railway Co.* (113 Eng. C. L. 242) and *Hardcastle* v. *South Yorkshire Railway Co.* (4 H. & N. 67), and in both of these cases recovery was denied.

The cases cited by claimant's counsel where recovery was had against the State are not authorities for the claims under consideration.

An examination of the cases discloses that generally they were cases arising out of faulty construction, failure in maintenance, lack of adequate warning or guide signs or lack of barricades or guard railing on State highways, and in each of them the injury was to one actually using and traveling on such highway.

Burns had left the State highway and for some time before he drove into the canal he had been traveling on the village streets of Waterford over which the State exercised no control. He was seeking, it is true, a State highway, but it cannot be reasonably claimed that it was the duty of the State to guide his way or save his straying to private or other or its own property. If any duty existed that required furnishing of signs or barricades, it might be suggested that it was a duty resting on the village whose duty it has since been made by force of statutes. (Gen. Mun. Law, § 125-a.)

None of the claimants was upon the State's lands in connection with canal navigation purposes; therefore, they cannot be held to be invitees, and applying the rules laid down in the cases cited, the State owed the claimants no duty of active vigilance to see that they were not injured.

Upon the facts in these claims, it cannot be correctly found that the State failed in any legal duty that it owed the claimants, and the claims must, therefore, be dismissed.

BARRETT, P. J., concurs.