WILLIAM D. MITCHELL, Claimant, *v.* STATE OF NEW YORK, Defendant.   (Claim No. 28406.)

Court of Claims, August 24, 1948.

*Julian R. Hanley* for claimant.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* of counsel), for defendant.

LAMBIASE, J. On the 3d day of May, 1946, at or about 1:30 A.M. claimant was driving his automobile in a general southeasterly direction on Schenck Road in Letchworth State Park at or near the Livingston-Wyoming County boundary line. As he was thus driving, he arrived at a point in said park where said Schenck Road forms a dead-end " T " intersection with another road known as Park Road, at which point, in attempting to make a left-hand turn to the northeast, he drove off the said intersection and into and against a tree some 150 feet northeasterly from the center of said intersection, damaging his automobile beyond repair and causing him to suffer permanent injuries.

It is the claim of the claimant that the State was negligent " in failing to erect proper signs on the Schenck Road, Wyoming County, at the boundary of Letchworth Park to warn traffic that it is entering the park; and further in failing to erect

any warning signs on said Schenck road inside Letchworth Park, in or near the southeast end of Schenck road to warn east-bound traffic on said road that said Schenck road is a dead end highway which terminates at an approximate T intersection with another highway.'' (Claimant's Claim, par. 2.) The State, on the other hand, maintains that the accident was due solely to the negligence of the claimant.

Schenck Road is situate in the town of Perry, Wyoming County, New York. It is about 1.6 miles in length, and its eastern terminus is at its juncture with said Park Road. It is paved with macadam to a width of 20 feet and is a county road for its entire width to a point thereon which is about 1,050 feet northwesterly from its intersection with said Park Road. Proceeding in a southeasterly direction from said last-mentioned point toward said intersection and for a distance of 550 feet measured along the center of said Schenck Road, only the south half of said road is located in and is a part of Letchworth Park. Continuing southeasterly along the remaining 500 feet of said road down to said intersection the entire width of Schenck Road is located in said park. It appears from the record that the north half of Schenck Road for the aforementioned distance of 550 feet, at all times in the claim mentioned, was a county road or highway.

Claimant's Exhibit 6, being also State's Exhibit I in evidence shows among other things a profile of said 1,050 feet of said Schenck Road and has indicated thereon, among other things, the elevations thereof at regular stations. Between station 9 and the intersection aforesaid there is a general downward or descending grade. More specifically: At a point 900 feet west of said intersection, the grade or slope is minus 6.6%; at a point between 600 and 700 feet west of said intersection the grade is minus 5.6%; at a point 500 feet west of said intersection it is minus 5.8%; at a point 300 feet west of said intersection it is minus 7.6%; and at a point 100 feet west of said intersection it is minus 5.2%. There are shrubs and trees on both sides of Schenck Road for a distance of 500 feet to the northwest from said intersection and on the day of the accident there was a great deal of foliage by reason thereof.

Park Road is shown on claimant's Exhibit 6 also being State's Exhibit I. Said Exhibit shows said Park Road running in a northeasterly and southwesterly direction. As it proceeds northeasterly from its juncture with the Schenck Road it has a loose gravel surface about fourteen feet in width, and as it

proceeds southwesterly therefrom, it is paved with macadam. Also leading off from said intersection and running in a general easterly and westerly direction, is a gravel road approximately 10 to 12 feet in width and known as the Kisil Point Road, its eastern terminus being on the top of the bluff overlooking the Genesee River. Between said Park Road as it proceeds north-easterly and said Kisil Point Road, there is a parcel of land upon which there is located the tree with which claimant came in contact. There is also a road to the east of said parcel making an island of it. Located at the intersection on the north side thereof just beyond the north edge of the pavement of Schenck Road, and about opposite to the point where the macadam pavement of said Schenck Road ends in the intersection, there is a tree. Approximately opposite said Schenck Road as it makes its juncture with said Park Road and located a short distance east of the east side of said Park Road as shown on claimant's Exhibit 6, on the day of the accident there was a pile of stones about 5.4 feet high, to the north of which pile of stones there was a tree and brush, and to the south of which there was a four-foot ditch bordered on its southerly side by trees and shrubs.

The record shows that at said point 1,050 feet northwest of the scene of the accident there was on the day of said accident a sign 12 x 14 inches in size, the bottom of which was 5 feet 8 inches from the ground, said sign being tacked on to a tree on the south side of said Schenck Road. Said sign had a green background and had inscribed thereon in white letters the legend " No Trespassing ". Some 550 feet to the southeast therefrom which point is some 500 feet northwest of the intersection there was nailed to a tree on both sides of said Schenck Road a sign of the same size and with the same color background as the first herein-mentioned sign, bearing the legend " No Trespassing for Any Purpose. Property of the State of New York." The words " No Trespassing " were in letters 2 inches high and the rest in letters 1 inch high. These two signs were about 5 feet above the ground and about 10 to 12 feet from the edge of the macadam. There were no other signs between this point about 500 feet northwest of said intersection and the point of the accident located in the intersection.

At the intersection there were two signs, one bearing the legend " Road Closed Ahead Stop " and the other bearing the legend " Road Closed." These signs were on the said Park Road and were there for the purpose of controlling traffic on

it and were not visible to travelers proceeding southeasterly on the Schenck Road as was the claimant herein. There were no signs on the Schenck Road either within or without the Park area for said distance of 1,050 feet warning southeast bound traffic on said Schenck Road of said dead-end " T " intersection; and there were no signs thereon of any nature other than those mentioned hereinbefore.

Letchworth Park is a State Park comprising some 6,700 acres of land under the immediate jurisdiction and control of the Genesee State Park Commission (Conservation Law, § 700), which commission has power among other things to: " Make rules for the regulation of traffic, fix the price to be charged by and regulate the conduct of drivers of public conveyances for carrying persons for hire within the limits of parks and reservations, fix the charges for automobile parking privileges in specified areas in the reservation, and the charges to be made by guides for their services, and have full control over all concessions and concessionaires." (Conservation Law, § 702, subd. 1.)

And to: " Make and enforce suitable rules and regulations for the proper exercise of the powers and duties hereby conferred and imposed upon such commission, and to amend the same." (Conservation Law, § 702, subd. 5, in part.)

This commission is the agent of the Conservation Commissioner of the State of New York and is charged with carrying out the laws relating to the management, maintenance, improvement and developement of parks, parkways, places and properties entrusted to it subject to the powers and rules of the Conservation Commissioner. (Conservation Law, § 662.) Furthermore, by section 676 of the Conservation Law as it read at the time of the accident in the claim set forth it was provided: " Any regional park commission as defined by section six hundred seventy-two of this article may regulate parking and the speed of motor vehicles on public roads or highways in or abutting park lands under the supervision of such commission or within five hundred feet of entrances to or exits from said park lands; providing such speed limitation shall not in any case be less than one mile in three minutes."

Pursuant to the authority granted to it, the Genesee State Park Commission having jurisdiction of Letchworth State Park adopted certain rules and regulations which were duly filed in the office of Secretary of State of the State of New York on August 23, 1944, as required by law. (N. Y. Const., art. IV,

§ 8.) These rules and regulations are then compiled by the Secretary of State and are published in such form as he may determine. (Executive Law, § 36.) Upon the trial of this claim, the State requested and there was reserved to it by the court the right to submit as one of its Exhibits to be marked "K", a certified photostatic copy of the rules and regulations of the Genesee State Park Commission, the State limiting its offer, however, with reference to said Exhibit to the regulation or rule governing traffic and in said Exhibit entitled "Traffic Control". (Genesee State Park Commission Rules and Regulations, art. 8, Traffic and Parking, § 4; 1 N. Y. Official Compilation of Codes, Rules & Regulations, p. 506.) This rule or regulation at all times in the claim mentioned provided: "*Speed limit.* Rate of speed by motor vehicle in excess of 20 miles per hour is prohibited, except where specifically permitted by signs." Pursuant to said reservation there were submitted two acts of rules and regulations of Genesee State Park Commission, each being certified by the office of the Secretary of the State of New York as being a correct transcript of the original thereof on file in said secretary's office. One set of rules and regulations purports to have been adopted at a regular meeting of said commission on the 17th day of June, 1931, and the other in April of 1940.

We have admitted over claimant's objection said section 4 of article 8 of the aforesaid rules and regulations of April, 1940, said article and section being part of what we now designate as State's Exhibit "K" in evidence and we reserve an exception to the claimant thereon. Furthermore, we have decided to take judicial notice of other rules and regulations hereinafter specifically set forth and also included in State's Exhibit "K". (Civ. Prac. Act, § 344-a.) We have deemed it necessary to do so in the orderly consideration of this case. (*Hunter* v. *New York, Ontario & Western R. R. Co.,* 116 N. Y. 615.) These rules and regulations to which we have reference are set forth in the printed certified copy of said rules and regulations (State's Exhibit "K") and are designated and provide as follows:

"ARTICLE *1* — DEFINITIONS

"(a) 'Park' defined: The term 'park' or 'parks' unless specifically limited, shall be deemed to include all parks, parkways, lands and waters under the jurisdiction of the Commission, all appurtenances thereto, and such other rights and appurtenances as the Commission shall utilize or have jurisdiction over, whether or not the same be now or hereafter owned or acquired by the State in fee or otherwise."

" (g) ' Permit ': Any license issued by or under the authority of the Commission permitting the performance of a specified act or acts."

" ARTICLE 3 — PERMITS

" 1. *Permits.* A permit to do any act shall authorize the same only insofar as it may be performed in strict accordance with the terms and conditions thereof. Any violation by the holder of a permit or his agents or employees of any term or condition thereof shall constitute grounds for revocation by the Commission, or by its authorized representative. * * * "

" ARTICLE 4 — PROHIBITED USES * * *

" 11. *Night Closing.* No person except employees or officers of the Commission shall be allowed within the park between the hours of 10 P.M. and 6 A.M. except under permit."

" ARTICLE 8 — TRAFFIC AND PARKING * * *

" 7. All provisions of sections 1 to 5 inclusive of this article shall apply with equal force to public roads or highways in or abutting park lands under the supervision of the Commission, or within 500 feet of entrances to or exits from said park lands."

" ARTICLE 10 — RESPONSIBILITY OF PUBLIC

" 1. State parks, by their nature, contain waterfalls, waterways, water areas, chasms, slopes and other natural features that might present dangers to the persons approaching these features. The Commission has attempted to insure the safety of the public by constructing trails, overlooks, roads and other ways for public use from which the natural features may be observed. Any person, within any park, who leaves established trails, overlooks, roads and other ways provided for public use does so at his own risk and responsibility."

" ARTICLE 11 — VALIDITY AND ENFORCEMENT * * *

" 2. *Enforcement.* Any violation of the foregoing rules and regulations shall constitute a misdemeanor, and on conviction a person so offending may be punished by a fine not exceeding $100 or by imprisonment not exceeding 30 days or by both such fine and imprisonment and, in addition thereto, shall be liable to a penalty of not less than $10 or more than $100."

It is to be noted in connection with the above that by section 678 of the Conservation Law it is provided in part, that:

" Notwithstanding any inconsistent provisions of this chapter, any violation of any ordinance, rule or regulation governing or regulating motor vehicle traffic on parkways or park roads

adopted by any regional state park commission, as defined by section six hundred seventy-two of this article shall be a traffic infraction. A traffic infraction is not a crime, and the penalty or punishment imposed therefor shall not be deemed for any purpose a penal or criminal penalty or punishment, and shall not affect or impair the credibility as a witness, or otherwise, of any person convicted thereof." (Added by L. 1945, ch. 516, eff. April 2, 1945.)

" ARTICLE *12* — TIME WHEN RULES AND REGULATIONS SHALL TAKE EFFECT

" 1. *When Effective.* These rules and regulations shall take effect June 1, 1940 after posting for at least 10 days in the principal buildings of the parks under the Commissioner's jurisdiction."

The State contends that the accident herein was caused solely by the negligence of the claimant in the operation of his automobile. It argues further in its brief submitted herein, that the highways and roads within the park are maintained for and are to be used in connection with park purposes only. It admits that the State should maintain proper signs to warn of danger to users of a park when it is being used for the purposes for which it is maintained and at times when said park is open for use. In other words, it is urged by the State that the claimant had no right to be driving in the park at that hour without a permit and that he was making an unauthorized use of a park road, to wit, using it as a short cut to his destination which lay beyond the park.

It is undisputed that claimant was driving on Schenck Road through the park at 1:30 A.M., without first having obtained a permit and was using said road as a short cut to his destination which lay beyond the limits of the park.

The position of the State herein raises a question as to the right of the claimant to be in the park at the time of the accident and to use said highway for the purpose for which he was actually using it. This necessarily brings us to a consideration of the status of the claimant at the time of the accident.

The right to recover in cases of negligence rests upon a breach of legal duty, and where there is no duty there is no cause of action. It is, therefore, incumbent upon the plaintiff to make it appear that there was a legal duty. But, it is not necessary in order to establish the legal duty to do more than prove the facts out of which the duty springs, for where the facts are established the law will fix the duty. The duty is created by

the law, but the facts must exist in order to give force or relevancy to the legal principles. In order to establish negligence on the part of the State it must be shown that the State did what it ought not to have done, or omitted something that it was its duty to do.

A park is a pleasure ground set apart for the recreation of the public to promote its health and enjoyment. (*Perrin* v. *New York Central R. R. Co.,* 36 N. Y. 120, 124; *Williams* v. *Gallatin,* 229 N. Y. 248.) Letchworth Park, being a State park, is maintained at State expense. All persons are invited to enter it and to enjoy its attractions and scenery. (Conservation Law, § 718 [1st numbered]. *Kittle* v. *State of New York,* 245 App. Div. 401, affd. 272 N. Y. 420.) The State is not an insurer of the safety of those who make use of its parks' facilities. The law requires, however, that it shall exercise reasonable care in the maintenance of its parks and in the supervision of their use by the public. (*Clark* v. *City of Buffalo,* 288 N. Y. 62; *Curcio* v. *City of New York,* 275 N. Y. 20, 23; *Peterson* v. *City of New York,* 267 N. Y. 204, 206; *Trimble* v. *State of New York,* 263 App. Div. 233; *Collentine* v. *City of New York,* 279 N. Y. 119.) Was the invitation of the State to claimant as a member of the public withdrawn, and, was the obligation of the State toward claimant changed, and, was the State relieved from its duty to warn at a place of unusual danger where a reasonable regard for the safety of a traveler required, merely because claimant failed to obtain a permit to " be allowed within the park between the hours of 10 P.M. and 6 A.M."? We think not. Assuming, but not deciding, that the regulation in question is applicable under the circumstances herein, it could be said that claimant was violating said regulation and upon proper proof of the same could be subjected to the prescribed penalties. The regulation in question does not absolutely prohibit any one's being within the park between the hours mentioned therein but merely prohibits being within the park between such hours without a permit. It does not declare him to be a trespasser (*Platz* v. *City of Cohoes,* 89 N. Y. 219; *Corbett* v. *Scott,* 243 N. Y. 66, 71); and, except for the rule or regulation claimant would not have needed a permit. The penalties have been prescribed by the regulation and by the statute which is the source of the commission's authority and the courts must not add others. (*Klinkenstein* v. *Third Ave. Ry. Co.,* 246 N. Y. 327.) As was stated by the court in *Corbett* v. *Scott* (*supra*) at page 71:

" Again we find the results flowing from violation of the statute are in themselves of slight importance compared with their possible effect on the civil rights of the violator and that the statute does not declare him to be a trespasser or single him out for peculiar penalties. Again the illegal element should not be allowed to offset the cause of action where it is irrelevant to the result. If one who operates a motorcycle while under the age of sixteen years is a trespasser, it would follow that the violator of any of the terms of the Highway Law would also be a trespasser and that even a failure to display proper lights and sound proper signals would outlaw the operator of a motor vehicle. No such absurd result would be for a moment tolerated.

" The difficulties in drawing the line between those breaches of statutory duty which create or defeat a cause of action and those which may be merely a contributing cause of injury must be met as they present themselves."

Accordingly, it has been held that the mere violation of some traffic law or ordinance by the driver of an automobile does not of itself constitute such negligence as to make him a *trespasser* upon the highway and preclude his recovery of damages caused by the negligence of another. (*Clark* v. *Doolittle,* 205 App. Div. 697; *Hall* v. *Hepp, Irish* v. *Hepp,* 210 App. Div. 149; *Audubon Transp. Co.* v. *Yonkers R. R. Co.,* 126 Misc. 180.) And, in considering the rights of those who traveled on Sunday in violation of law the court in *Platz* v. *City of Cohoes* (89 N. Y. 219, 220, 223, 224, *supra*) said: " The traveler is not declared to be a trespasser upon the street, nor was the defendant appointed to close it against her. * * * But the act of travel is not one which usually results in injury. * * * At common law the act was not unlawful and the plaintiff was still under its protection, and may resort to it against a wrong-doer by whose act she was injured."

We conclude, therefore, that the State owed to the claimant a higher duty than a licensor owning private property owes to a licensee, or than an owner of private property owes to a trespasser, namely, that of reasonable care.

Where the State or Nation enters into a contract, or acquires property for a purpose not essentially public, the rules applicable to private persons under like conditions apply in a general sense to the State or Nation. It is not strictly accurate to say that the property is held as private property, for a State or Nation cannot, in a strict sense, be said to hold property for private purposes, but there is a distinction between purposes

purely public and purposes of a private nature. (1 Elliott, Roads and Streets [1926 ed.], § 150, pp. 173–174.) Illustrative of the foregoing are cases of: *Splittorf* v. *State of New York* (108 N. Y. 205); *Donahue* v. *State of New York* (112 N. Y. 142); *Tully* v. *State of New York, Burns* v. *State of New York, Grober* v. *State of New York* (169 Misc. 796); *Panunzio* v. *State of New York* (292 N. Y. 625); *Hall* v. *State of New York* (265 App. Div. 1037); *Birch* v. *City of New York* (190 N. Y. 397, 402); *Bennett* v. *City of Mount Vernon* (243 App. Div. 119); *Parry* v. *State of New York* (Ct. of Claims, claim No. 26212); *Troilo* v. *State of New York* (Ct. of Claims, claim No. 26213).

In the *Parry* and *Troilo* claims (*supra*) then Presiding Judge JAMES J. BARRETT of this court expressly draws a distinction between property owned by the State in its "proprietary capacity" and "a State Park to which the public was expressly invited". We make the same distinction herein. (See *Roth* v. *State of New York, Murphy* v. *State of New York,* 262 App. Div. 370. Also *Roth* v. *State of New York,* 263 App. Div. 1062, affd. 289 N. Y. 726; *Murphy* v. *State of New York,* 263 App. Div. 1063, affd. 289 N. Y. 726.)

Under the circumstances herein it was the duty of the State properly and adequately to warn traffic proceeding southeasterly on said Schenck Road of the dead-end " T " intersection existing at its juncture with said Park Road, and in view of all the conditions presented the State was negligent in failing to erect adequate and proper warning signs at, near and in the vicinity of said intersection, the scene of claimant's accident, to give the traveler fair and reasonable notice of the dangerous situation ahead.

In view of the foregoing, it becomes necessary for us, having determined that the State was negligent, to consider the claim of the State that the accident in the claim described was caused wholly or in part by the negligence of the claimant. On this issue we must and we now consider the effect of the violation of section 11 of article 4 of the Genesee State Park Commission Rules and Regulations which we have hereinbefore discussed at some length. We are of the opinion that the violation of this rule or regulation by the claimant had no such direct connection with the accident and the results thereof as to form and to be a part of the act causing it so as to bar recovery on the part of the claimant for the injuries received and the damages sustained by him. (*Corbett* v. *Scott,* 243 N. Y. 66, *supra; Brown* v. *Shyne,* 242 N. Y. 176.) We may speculate upon the reason or

purpose for which said regulation was passed, but certainly we are not in the realm of speculation or surmise when we say that the dangerous condition which we have described herein existing at, near and in the vicinity of said dead-end " T " intersection, for the reasons herein set forth would have existed irrespective of whether or not claimant had obtained a permit. Even if the act of the claimant in driving through said park at 1:30 A.M. without a permit were to be considered a violation of said regulation, the only effect of his act was to place him in a position where the negligence of the State could injure him. It was a condition, not a cause. Driving in the park at that hour did not injure him. His own act was not the agency which caused his injuries and the damage to his automobile; but it was the negligence of the State of New York as herein set forth. His act was not the proximate cause for the result would have been the same if his act of driving had been under permit. In such cases as the courts have always held, the violation of the statute is not the immediate cause of the injury and will not defeat a recovery. (*Connolly* v. *Knickerbocker Ice Co.* 114 N. Y. 104, 108; *Platz* v. *City of Cohoes*, 89 N. Y. 219 220, 223, 224, *supra; Wood* v. *Erie Ry. Co.*, 72 N. Y. 196; *Hoffman* v. *Union Ferry Co.*, 68 N. Y. 385; *Carroll* v. *Staten Island R. R. Co.*, 58 N. Y. 126, 132; *Blair* v. *Granger*, 24 R. I. 17.) The last-cited case is directly in point since the plaintiff therein when injured was using a park for the purpose of business in violation of an ordinance prohibiting the same. At page 22 of 24 Rhode Island we find the following: " whether the place where the accident happened was a highway or a park, it seems to us that the principle laid down by this court in *Baldwin* v. *Barney*, 12 R. I. 392, 397, would be applicable. In that case Durfee, C. J., in delivering the opinion said: ' A defendant who is sued in tort cannot justify the tort, whether wilful or negligent, by proving that the plaintiff when injured, was transgressing the law, so long as the tort and the transgression are independent or disconnected, except in time and place, in their relation to each other.' The law violated in that case was one in relation to travelling on Sunday."

It is also claimed by the State that claimant was violating the park regulation on speed hereinbefore set forth, at the time of the accident. It is undoubtedly true as it appears from the record, that as claimant approached the point of the accident he was traveling between 35 to 40 miles an hour. However, that does not necessarily impute negligent driving to him. It

seems to us that the pertinent question is whether or not, under the circumstances, such driving was negligent driving; and whether or not this is so must be determined from all the existing circumstances and conditions. (*Killoran* v. *State of New York,* 155 Misc. 26.)

It appears that when claimant was on the Schenck Road about the distance of a mile northwest of the point of the accident he was told by one of the occupants of his automobile that " there was a curve some place " (sm. 70) and by another passenger that there was a " corner " up ahead. There is evidence to indicate that after he was thus advised by his passengers, he slowed down the speed of his automobile to five miles an hour upon arriving at another intersection, to wit, one formed by said Schenck Road and another road known as Slocum Road, which intersection is located about nine tenths of a mile northwest of the scene of the accident, although the record indicates that claimant had been driving 40 to 50 miles an hour just prior to arriving at said intersection. It would seem that he must have had control of his automobile to have accomplished that. We are satisfied, however, that no one including the State adequately and properly told claimant that he was approaching such a hazardous spot as the point of the accident has herein been described to be.

The negligence of the State in its failure to adequately and properly warn of the danger at said Park Road-Schenck Road intersection was the proximate cause of the accident. Unquestionably, adequate and proper warning would have resulted in a slower speed and a quicker realization of the dangers ahead. The State cannot be excused for either creating or, at any rate, maintaining a situation at the point of the accident which was fraught with danger and where the slightest miscalculation as to speed or distance or error of judgment on the part of the driver was prone to have serious results. (*Barna* v. *State of New York, Macken* v. *State of New York,* 267 App. Div. 261, affd. 293 N. Y. 877; *Williams* v. *County of Saratoga,* 266 App. Div. 431, affd. 291 N. Y. 782; *Petrozak* v. *State of New York, Tauber* v. *State of New York,* 189 Misc. 809; *Nelson* v. *State of New York, and ten other cases,* 178 Misc. 875; *Wasnick* v. *State of New York,* 183 Misc. 1073, mod. 269 App. Div. 1001, affd. 295 N. Y. 902.) We do not find in the record sufficient facts to charge the claimant with negligence causing or contributing to the accident. For the foregoing reasons and without discussing claimant's alleged grounds for recovery any further we are of the opinion that

claimant is entitled to an award herein. There remains to be considered only the question of claimant's damages.

Claimant was 23 years of age at the time of the accident. He had been honorably discharged from the United States Army in February, 1946, because of disability, having received a bullet wound to his right arm in Germany, which permanently weakened it, atrophying the muscles thereof.

As a result of the accident herein described, claimant sustained a compound fracture of the right humerus, lower third, and the right arm has been permanently shortened one-half inch. There is also a resulting crookedness of the arm with a bump or " spike " on the upper part thereof. This " spike " or bump it was testified, will probably disappear with time. He sustained bruises of the left knee, and suffered shock and much pain. He was hospitalized at a veterans' hospital after the initial emergency treatment which was given him following the accident. The usefulness of claimant's arm was permanently impaired by reason of his bullet wound received before the accident as hereinbefore mentioned, and no claim is being made by him for loss of wages or earnings or for permanent injury to the arm except in the particulars which we have specifically hereinbefore mentioned.

Claimant asks recovery for damages to his automobile. At the time of the accident he was driving a 1935 Dodge Tudor coach, the value of which it was established was $305 before the accident and $50 after the accident. Claimant, however, testified that he received for the automobile, after the accident, the sum of $60. He also paid $10 for having the car towed away from the scene of the accident.

We are, in an accompanying decision, making an award to claimant in an amount which we feel will adequately compensate him for the damages sustained by him.

We are not unmindful of the case of *United Mut. Fire Ins. Co.* v. *State of New York* (186 Misc. 321). We have examined the record and the decision therein wherein it appears that the court concluded among other things: " That the driver of the truck having been guilty of contributory negligence which was imputable to his employer, the claimant's assignor, claimant cannot recover herein ". (Conclusions of Law II.) We agree with that conclusion of the court. In view of the facts and circumstances herein and determining only the questions arising therefrom, we are not required to and we do not apply to the determination of the issues herein, the entire reasoning employed by the court in the above-cited case.