ROGER T. PICHE, as Administrator of the Estate of TEDDY PICHE, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29984.)

Court of Claims, August 2, 1951.

*Harry A. Reoux, Elihu R. Geraghty* and *John J. Bennett* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Edward R. Murphy* of counsel), for defendant.

YOUNG, J.   East Brook, in Warren County, New York, flows northward and empties into the south end of Lake George.   East of East Brook the land bordering the lake is owned by Benjamin C. Green.   In December, 1946, and by virtue of the authority of section 12 of chapter 300 of the Laws of 1946, the State of New York purchased the land bordering the lake and west of the east boundary of East Brook for a park and beach development. Hence the State's property includes the entire channel of the brook and the land west of it.   All of the land lying beneath the waters of Lake George is owned by the State of New York. *(Schneider* v. *Village of Lake George,* 254 App. Div. 909, affd. 280 N. Y. 507.)

On both the State's and Green's land there is a beach rimming the south end of the lake and extending out into its waters for some distance in a very gradual decline, except at the outlet of East Brook.   There, the swift flow of water from the brook has dug a channel into the lake making a sudden drop-off of some depth from the bed of the lake to the bottom of the channel.

At about 3 o'clock in the afternoon of July 4, 1949, claimant's intestate, Teddy Piche, aged five years and nine months, went to the beach accompanied by his parents. The family ensconced itself on the sand a few feet east of the East Brook outlet, i.e., on Green's land. A short time later, Teddy was missing. His body was found soon after in the drop-off made by the channel of East Brook and about twenty-five feet into the lake from the mouth of the East Brook outlet. It is a reasonable assumption from the evidence that the boy waded into the water of the lake from Green's land and, after having walked out into the shallow water a few feet, stepped into the drop-off and drowned.

Given these facts, and the further one that the State ought to have had knowledge of the condition of the channel, if it did not actually, the State denies any liability for the drowning on the theory that this land was never opened to the public for use as a bathing beach and that bathers on it were at best licensees to whom no duty was owed other than to refrain from any affirmative act of negligence. The State, in its brief, cites many cogent cases in support of this theory which are all very compelling as being definitive of the duty owed licensees but which the court feels are not applicable in this instance, the decedent being, in its judgment, an invitee.

If the beach had been opened to the public, and was in fact, if not in name, a public park, the State is liable. (*Roth* v. *State of New York*, 262 App. Div. 370.) The State's argument that it had not been officially opened was completely demolished by the introduction into evidence of a contract between the State and one John Palmer. This contract was let out in 1947 as a result of advertising for bids in the public press by the State and it was renewed in 1948 and 1949. The contract gave to Palmer " the exclusive privilege of selling refreshments such as ice cream, candy, soft drinks, light lunches, etc., and souvenirs on the property commonly known as the Lake George Beach at the southerly end of Lake George ". The contract further provided that Palmer could if he desired " provide change rooms and basket storage facilities for the convenience of the bathers at a fee to be approved " by the State.

The fact that the State let out this concession patently designed, not only to provide income for the State, but also to furnish conveniences for the bathers is certainly conclusive that the State considered the beach open to the public as early as 1947. There is no evidence that the public was ever led to believe otherwise.

Apart from this consideration of the concession contract, the court is persuaded to the opinion that the claimant's intestate was an invitee.

People flocked to this beach to bathe, with thousands being there in the summer of 1949 and thousands each year for many years before. This the State was aware of, and from the time of the State's ownership it did nothing to prevent it. The attractions of the beach are so obvious that a mere glance at the property, without the crowd of bathers, would indicate its best use. The property was purchased by the State for a public bathing beach. Bearing these facts in mind, let us now consider a number of the cases cited by the State.

In *Walsh* v. *Fitchburg R. R. Co.* (145 N. Y. 301) a child was injured while on railroad premises across which the public was accustomed to travel. In *Fox* v. *Warner-Quinlan Asphalt Co.* (204 N. Y. 240) the public was accustomed to crossing the defendant's open field. A child, in crossing, fell into a sand and gravel pit and was injured. In *Carbone* v. *Mackchil Realty Corp.* (296 N. Y. 154) some boys were injured while climbing on an abandoned foundation wall from which the defendant owner of the premises had chased other children away on numerous occasions. In both *Walker* v. *Bachman* (268 N. Y. 294) and *Simmons* v. *Poughkeepsie Sav. Bank* (255 App. Div. 887) children were injured while playing on the premises of another with the landlord's acquiescence. In *Morse* v. *Buffalo Tank Corp.* (280 N. Y. 110) a child was burned when he and some other boys stole gas from a drip can on the defendant's property and threw it on a fire in a nearby street.

In none of these cases did the court hold the injured to be an invitee for the reason that the injured's presence on the property of another was at cross purposes with the use to which the land was put or was at least not in the furtherance of the landholder's business. This same holds true with *Zaia* v. *Lalex Realty Corp.* (287 N. Y. 689), *Vaughan* v. *Transit Development Co.* (222 N. Y. 79), and *Sanders* v. *Rand Realty Corp.* (241 App. Div. 408) all cited by the State.

The difference is well illustrated by *Hall* v. *State of New York* (173 Misc. 903). There the State built and maintained a dirt road to a Barge Canal lock and next to the road was a sign bidding " Visitors Welcome ". The purpose for which visitors were welcomed was to view the lock which was unique. The decedent was killed when he slid off the road in his truck and into the canal. The court held that he was not an invitee because

he was on the road for his own purposes and was not there within the limits of the State's invitation to see the lock.

The State has also cited a number of cases concerning death by drowning. In *Maurizio* v. *State of New York* (Claim No. 29099) decedent was swimming in the Barge Canal. In *Breeze* v. *City of New York* (275 N. Y. 528) decedent drowned in water accumulated in an excavation on the defendant's land. In *Panunzio* v. *State of New York* (266 App. Div. 9) decedent fell off a catwalk on the canal system. In *Pendino* v. *State of New York* (196 Misc. 184) a boy fell from a canal bridge fender wall. In none of these cases was the decedent using the property for which it was intended even though its incidental use for swimming may have been acquiesced in.

In *Tuerck* v. *State of New York* (196 Misc. 300) a pond in a State park was separated into two areas, one for swimming and the other in which swimming was prohibited. A child drowned in the prohibited area and recovery was denied for the reason that, as to that area, the child was not an invitee even though the child was an invitee as to the swimming area. In other words, the child was not using the area for the purpose intended at the time of the drowning.

The State also cites *Cunningham* v. *City of Niagara Falls* (242 App. Div. 39, affd. 269 N. Y. 644). By cutting down the banks and constructing a dam, the defendant city turned a stream flowing through a city park into a lake. The common council adopted an ordinance forbidding any person to bathe in the lake and also hired special watchmen whose duty it was to enforce the ordinance. The ordinance was not strictly enforced and children were accustomed to bathing there, this being known to the superintendent of parks. A young girl was drowned while wading in the pond and her administratrix brought action. The plaintiff's testimony showed that on the day in question a watchman had told the decedent that she could not swim at the dam, and ordered her to go further up the lake if she wanted to go swimming and that the child obeyed and went to the place where the drowning occurred. The court held (p. 42) in denying recovery that "the city exercised all the care which was required of it in the premises, when it passed the ordinance in question, and when it hired watchmen to see that its edict was enforced." It further stated that one entering a lake or stream to bathe or swim "cannot rely upon the assumption that it has been made safe for the purpose for which it is being used, in the absence of representation on the part of the owner to that effect." (P. 42.)

The purpose of this pond was not for swimming and this was expressly declared by the city ordinance. In the absence of this express prohibition it would seem that recovery would have been allowed.

In *Yerden* v. *State of New York* (198 Misc. 1076) decedent was drowned when he struck a submerged rock while swimming in the Jamesville reservoir. The State knew that the reservoir was used for swimming and had erected signs prohibiting swimming after 10:00 p.m. The accident happened at 7:30 p.m.

The court held that the revocable permission to swim until 10:00 p.m. did not constitute an implied invitation, that the reservoir was constructed as a feeder for the Erie Canal and that the property was not maintained by the State as a recreational or park area. "Decedent was not upon the State's land in connection with canal navigation purposes nor on any other business except his own convenience." (P. 1078.)

In the case at bar, this land was purchased through an appropriation for a public park and the State, in so appropriating money, has declared the land to be taken to be for public use. (*People* v. *Adirondack Ry. Co.,* 160 N. Y. 225, 248, affd. 176 U. S. 335.) "A park is a pleasure ground set apart for the recreation of the public to promote its health and enjoyment." (*Mitchell* v. *State of New York,* 193 Misc. 507, 515, citing cases.) This land, purchased through an appropriation for a public park, and being used for its obvious purpose, *without prohibition,* and with knowledge on the part of the State, was in fact a public park.

The State of New York takes just pride in its beautiful and numerous parks and beaches. Millions of dollars have been spent to put within the reach of all the citizenry recreational facilities ordinarily available only to the wealthy. However, this munificence on the part of the sovereign gives rise to inescapable obligations, one of which is to warn against hazards in the use of these facilities. When the State fails in these obligations, it cannot avoid responsibility by saying that the area was never opened to the public when its every action indicates the contrary and where the public has been led to believe it was so opened by its continuous use without prohibition.

Claimant's intestate was an invitee. The existence of the channel and the drop-off within the limits of the beach constituted a dangerous condition of which the State should have known. The State had a duty to warn bathers of the danger which it failed to do. (*Roth* v. *State of New York,* 262 App. Div. 370, *supra.*)

At the time of the trial the State submitted orally certain proposed findings of fact which are contained in the record. The court makes the following disposition of these findings:

22A — Refused
22B — Refused
22C — Refused

An award is made in an accompanying decision.