Benjamin Brenner, J.
A rowboat containing the injured plaintiff and two children pitched over a dam in a lake, due to the pull or drag of water caused by a storm (“ Dianne ” of 1955) several days earlier. Suit was commenced against Johnson, the owner of the dam, and Seaman, the owner of the boat which had been rented to the injured plaintiff, for failure to warn her of the strong current. Johnson was exonerated at the end of plaintiffs’ case because no prima facie proof of negligence as to her was established. Seaman was found liable.
Seaman moved for a directed verdict and for a dismissal of the complaint prior to the rendition of the verdicts against him and he now renews such motions and further moves to set the verdicts aside as against the weight of the evidence. It would seem useful to set out the rationale of the dismissal of plaintiffs’ causes against Johnson before dealing with Seaman’s motions.
Plaintiffs had argued that on the evidence of permissive rentals of rowboats to members of the public and the use of such boats by adjoining property owners the lake was a “ public lake ”, and that the injured plaintiff thereupon became an invitee of Johnson, the owner of the dam, who owed a duty of reasonable care to give warning of a condition of danger. The court rejected that argument. Clearly, those who were not property owners were strangers there as to Johnson and, except as licensees like the injured plaintiff, had no right to enter upon or make use of the lake. Hence the permissive use of the lake by the injured plaintiff did not alter its private character.
It was then argued that even if the injured plaintiff was a licensee as to Johnson, the latter was duty bound to give adequate warning that the dam and its adjacent waters constituted a trap. This theory, too, was held untenable in the absence of evidence at the end of plaintiffs ’ case of actual as distinguished from constructive knowledge by Johnson of any excessive current near the dam or of any hidden threat to permissive users or licensees in the lake (Higgins v. Mason, 255 N. Y. 104; Restatement, Torts, § 342); nor was there any proof, assuming the “ trap ” theory to be applicable, that Johnson had, by some affirmative act of his own, created the dangerous current, or inflicted intentional injury to the licensee. (Mayer v. Temple Properties, 307 N. Y. 559; Mendelowitz v. Neisner, 258 N. Y. 181.) It should be here noted that evidence as to the storm *883 which had occurred several days prior to the accident, was presented and only came to light after dismissal of plaintiffs’ suit against Johnson.
The defendant Seaman, however, had enjoyed a benefit in the rental of the rowboat to the injured plaintiff. Thus, as to him, she was an invitee (Heskell v. Auburn Light Heat & Power Co., 209 N. Y. 86, 91; Brister v. Flatbush Leasing Corp., 202 App. Div. 294,298; Plummer v. Dill, 156 Mass. 426; Georgia Power Co. v. Deese, 78 Ga. App. 704) and Seaman’s duty to the plaintiff was one of reasonable care. Plaintiffs’ theory of actionable negligence against Seaman is not that of a failure to give warning about an unknown and hidden danger but of a failure to warn about the current which was reasonably foreseeable from the storm and floods of several days earlier. Seaman’s failure to warn is thus claimed to have constituted neglect to exercise reasonable care toward the invitee as to a condition of danger of which he is chargeable with constructive knowledge (Piche v. State of New York, 202 Misc. 84).
Seaman urges several grounds for dismissal. He compares himself to the lessor of a car operated upon a highway at a place of danger. But he was part owner of the private lake which was quite unlike and cannot properly be compared with a public highway. Thus, if a lessor of a car has knowledge, actual or constructive, of a place of danger upon his own private road to which the use of the leased car is to be confined, actionable tort might indeed be found for failure to apprise of the danger.
Said defendant also vigorously contends that, lacking ownership or control of the dam itself, he is under no duty to inform of any danger lurking there. This, too, is fallacious, because he admittedly did partly own and authorize the use of and did exercise some manner of control over, all of the private lake, including the turbulent waters near the dam. It is, after all, the waters adjacent to the dam rather than the dam structure itself which constituted the site of danger.
Finally, Seaman claims that existence of the huge dam and the absence of prior accidents there during 50 years of its use foreclose the theory that it constituted a danger. Here again he loses sight of plaintiffs’ theory that as invitees of such defendant, they need not rely upon the theory that the dam constituted a trap and may recover for failure to exercise reasonable care to apprise the injured plaintiff of the strong current caused by the storm — this despite the absence of prior injury for half a century. (Barrett v. Lake Ontario Beach Improve *884 ment Co., 174 N. Y. 310, 316; Cleveland v. New Jersey Steamboat Co., 125 N. Y. 299, 306.)
However, the testimony given by the person who rescued the injured plaintiff, as one of her own witnesses, is most damaging to the plaintiffs on the question of contributory negligence. He testified that while standing on the dam structure he heard the loud noise of the waterfall and that he observed the rowboat moving toward and upon the dam rather than parallel to it. This testimony, taken together with evidence of the huge length of the openings through the dam structure and the tremendous flow of water therethrough, all militate against plaintiff’s claim that she was free from fault. It is most doubtful that, as she and the children testified, she failed to see the flow and to hear the spilling of water over the dam near which she allowed the boat to venture. Yet, unlike the court in Empire Dist. Elec. Co. v. Rupert (199 F. 2d 941) I am unable to say that as a matter of law in the exercise of reasonable care she should have seen or heard the current and waterfall.
Apparently the jury was also aware of this latter problem. Its verdict for the injured plaintiff in the nominal sum of $5,000 for fractures of the skull and pelvis, which required many weeks of hospitalization and which rendered her disabled to date, is equal to that awarded to her husband for his loss of services. The verdicts are thus wholly disproportionate and indicate that the jury was also skeptical about her right to recover and that it was emotionally affected by the nature and extent of her injuries. It was plainly a compromise verdict though, as above indicated, I am unable to say that the injured plaintiff was contributorily negligent as a matter of law, or that she has no moral right to recover. In any case, as was stated in Miller v. Barker, Rose & Cinton Co. (173 App. Div. 186, 188) “ Either the plaintiff is not entitled to recover at all, or he is entitled to be compensated for his damages.” The motions by the defendant Seaman for a dismissal and for a directed verdict are denied. His motion to set aside the verdict is granted and, as to him, a new trial ordered.
Settle order on notice.